CHARLES S. GRAHAM *et al.* Plaintiffs in Error, *vs.* ALICE DEUTERMAN *et al.* Defendants in Error.

*Opinion filed February 16, 1910.*

1. WILLS—*competency of non-expert opinions as to mental capacity.* A witness without special skill or training who has sufficient knowledge of the testator to express an opinion as to the testator's mental condition may detail the facts and circumstances from which the jury might form an opinion and may then give his own conclusions from such facts and circumstances in the form of an opinion, and such opinion should be received by the jury and given the weight it appears to be entitled to.

2. SAME—*whether non-expert may give opinion is for court to determine.* Whether a non-expert witness has a sufficient knowledge of the testator to express an opinion as to the testator's mental condition is a question to be determined by the court.

3. SAME—*"senile dementia" is merely imbecility from old age.* The term "senile dementia" means that diminution and weakness of the mental faculties which result from old age, and it does not necessarily exclude the possibility of testamentary capacity in a person whose condition is so described.

4. SAME—*when decree setting aside a will must be reversed.* A decree setting aside a will upon the ground of want of testa-

mentary capacity must be reversed where, assuming that every-
thing testified to by the contestants' witnesses is true, the evidence
is wholly insufficient to overcome the undisputed facts proved by
the proponents of the will.

WRIT OF ERROR to the Circuit Court of McLean county;
the Hon. COLOSTIN D. MYERS, Judge, presiding.

WELTY, STERLING & WHITMORE, and BLINN & COVEY,
(SAIN WELTY, guardian *ad litem,*) for plaintiffs in error.

LIVINGSTON & BACH, and F. L. CAPPS, for defendants
in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Two decrees of the circuit court of McLean county, set-
ting aside the will of William A. Graham, deceased, have
been reversed by this court, the first on an appeal (*Graham
v. Deuterman,* 206 Ill. 378,) and the second on a writ of
error. .(*Graham* v. *Deuterman,* 217 id. 235.) After the
last reversal the cause was re-instated in the circuit court,
and the issues whether at the time the will was executed
the testator was of sound mind and memory, and whether
undue influence was exerted by the devisees, or any of
them, to procure its execution, were submitted to another
jury. The trial resulted in a verdict finding (1) that the
testator was not of sound mind and memory; (2) that
there was no undue influence causing the execution of the
will; and (3) that it was not the last will and testament
of William A. Graham. The court overruled a motion of
proponents of the will for a new trial and again entered
a decree setting aside the will. A writ of error issued from
this court has brought the record here for review.

On the first trial the court instructed the jury to find
for the proponents of the will on the issue of undue influ-
ence, and the verdict was that the testator was not of sound

mind and memory. On the appeal no error of law was found in the record, but the court decided that the verdict was manifestly against the clear weight of the evidence; that in any view of the evidence it could not fairly be said that the testator was not of sound mind and memory, and that the trial court should have set aside the verdict on that ground. On the review of the second trial by writ of error it was found that the court erred in overruling objections to testimony which had only the effect of blackening the memory of the testator and prejudicing the jury against him, but the decision as to the weight of the evidence was the same as before. The material testimony was substantially the same as on the first trial, and the conclusion was that the verdict was manifestly against the clear weight of the evidence and that the decree for that reason could not be sustained.

If it was true of the previous records that the verdicts were clearly and manifestly against the weight of the evidence it is equally true of this record. On the appeal from the first decree much pains were taken to state the testimony of the various witnesses showing that the verdict was against the evidence, and when the case was here the second time it was shown that the evidence was substantially the same as before and the testimony of the subscribing witnesses to the will was set out at length. On the last trial it was agreed that either side might read the testimony of absent or deceased witnesses as given on the previous trials, and nearly all of the same witnesses who testified before were examined and gave the same testimony. There was no material difference in their testimony from that previously given and stated in the former opinions, but each side produced a few additional witnesses whose testimony was of like character and weight as that introduced on the same side at former trials, with the exception of the testimony of a doctor produced by the contestants. He said that six or eight years before the death of the testator

he examined him; that the testator gave him his symptoms, which were forgetfulness, weakness, loss of appetite, not sleeping well, and that sometimes he was irritable. From the examination and the symptoms given by the testator the witness made up his mind that the case was the beginning of softening of the brain, for which the witness said the technical term is "senile dementia." That term, which the witness said described the condition of the testator, is merely imbecility from old age. As the words indicate, it is that diminution and weakness of the mental faculties which result from old age. The witness said it was the beginning of the breaking down of the system,— one of the failings that old age brings on,—and he gave an opinion that the testator was capable of transacting some business and yet was not what he would consider perfectly sound and not able to transact business of importance. The doctor thought the testator could do a little ordinary business, such as trading and paying bills, but when it came to important business it was a different thing. The doctor did not treat him afterward but saw him on the road and asked him how he was, and he said he was not feeling very stout, and when he saw him on the street frequently afterward he appeared to talk intelligently. The testator lived six or eight years after that examination and finally died of consumption, and, according to about all the other testimony for the contestants, was in about the same mental condition that he always had been. He always had defective eyesight, and an ankle had been broken which had never been restored to entire usefulness, so that he was a cripple. When he drove to town he had some one with him, for the obvious reason that he could not distinguish objects, and in his later years he usually had his boy Arthur, who drove the team and who was only thirteen years old when the testator died. He certainly did not have that boy along to transact business for him. It is also true that his wife did most of the buying of groceries and family

supplies and trading at the stores, but that is usual and does not prove mental incapacity of the husband. He transacted such business as usually falls to the share of the man, and there is no evidence that he did not do it with ordinary intelligence. The fact that he asked ten cents a pound for shoats when the market price of hogs was six cents, or that some witness did not succeed in trading with him, does not demonstrate a lack of capacity; nor does the fact that he had a violent quarrel with another witness as to whether he had sold him clover hay or timothy, in which quarrel witness was as violent and acted as badly as the testator.

We have heretofore given, and do now give, to the trial judge and jury all the advantages to be derived from seeing the witnesses and hearing them testify, so far as credibility is concerned, but assuming as true everything stated by the witnesses for the contestants, the evidence is wholly insufficient to overcome undisputed facts proved by proponents of the will. In the case of *Roe* v. *Taylor,* 45 Ill. 485, the court first laid down the rule that a witness who is without special skill or training, after detailing the facts on which an opinion as to mental condition is based, may give to the jury that opinion, to be received by them and valued according to the intelligence of the witness and his capacity to form the opinion. Whether a non-expert witness has sufficient knowledge of another to express an opinion on that subject is to be determined by the court. (*Grand Lodge Independent Order of Mutual Aid* v. *Wieting,* 168 Ill. 408.) A witness who is not an expert may detail facts and circumstances from which the jury might form an opinion, and may then give his own conclusion from such facts and circumstances in the form of an opinion. (*Snell* v. *Weldon,* 239 Ill. 279.) Such opinions are to be given the weight which they appear to be entitled to, but the witnesses for the contestants stated no facts or circumstances which in our opinion could induce a reasonable belief that the testator was not mentally capable of making a will.

The issues have been tried three times, and that fact adds emphasis to what was said on the first appeal, that if we could say the finding and decree were fairly sustained by the evidence we would unhesitatingly affirm the decree, but we are still unable to do so consistently with our view of the law.   It is now evident that no further testimony can be' produced by the contestants, and that a continuation of the litigation could not result in any benefit to them.

The decree is therefore reversed.        *Decree reversed.*