(No. 11945.—Decree affirmed.)
HENRY TURCKHEIM, Appellee, *vs.* LOUIS BIRKLEY *et al.* Appellants.

*Opinion filed April 15, 1919.*

1. PLEADING—*pleas of incapacity to sue are pleas in abatement.* Pleas of incapacity to sue are pleas in abatement and do not go to the merits of the bill but only tend to an abatement of the suit.

2. SAME—*pleas to the person should be filed in apt time.* A plea that a complainant is an alien enemy is a plea to the person and should be filed in apt time, and when not filed until the parties are engaged in the trial of the cause the chancellor does not err in striking the plea from the files.

3. WILLS—*mental capacity at time of making will determines validity of will on that issue.* Where a will is contested on the ground that the testatrix was not of sound mind the test is the mental condition of the testatrix at the time of making the will.

4. SAME—*physical weakness may be considered on question of mental capacity.* While physical weakness does not, of itself, render a person mentally incapable of making a will, such weakness may be considered by the jury with the other evidence on the issue of testamentary capacity.

5. SAME—*when finding of jury on question of mental capacity will be sustained.* In a will contest, where the testimony is conflicting on the question of the mental capacity of the testatrix and the verdict of the jury is not clearly against the weight of the evidence, the finding of the jury must be regarded as conclusive.

APPEAL from the Circuit Court of Marion county; the Hon. WILLIAM B. WRIGHT, Judge, presiding.

FRANK F. NOLEMAN, CHARLES F. PATTERSON, and JUNE C. SMITH, for appellants.

A. D. RODENBERG, CHARLES F. DEW, and KAGY & VANDERVORT, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Marion county, entered on the verdict of the jury finding the testatrix, Martha Gickoni, not of sound mind.and disposing memory at the time of the execution of her alleged will and that she was at that time under undue influence, and setting aside said will.

The issues were joined on the question of testamentary capacity at the time of the execution of the will and on that of undue influence of the appellant Louis Birkley. An answer was filed denying the allegations of the bill and a replication was filed thereto. The trial was proceeding in the usual way before a jury when counsel for the appellants asked leave of court to examine appellee before the court and not in the presence of the jury, touching his competency to bring or maintain the suit. The court sustained the objection of appellee that no plea setting forth such matter had been filed nor was any such matter set forth in the answer. Thereupon the appellants asked and obtained leave to withdraw their answer and filed two pleas alleging that the appellee was an alien enemy, a subject of a government then at war with the United States, and had no right to maintain a suit in the courts of this country; that by reason of the fact that he was an alien enemy he could not inherit under our statute, and for that reason had no interest in the estate of Martha Gickoni and could not maintain a bill to contest the will in question. The court sustained a motion of the appellee to strike said pleas on the ground that they were not filed in apt time. Thereupon appellants filed their answer denying the material allegations in the bill and in addition the special matter set up in the foregoing pleas. The court sustained exceptions to that part of the answer setting forth the special matter contained in the above pleas.

Such averments are not properly an answer to the bill but should be raised by pleas to the person. (Puterbaugh's

Ch. Pl. & Pr.—5th ed.—100.) "Pleas to the person do not necessarily dispute the validity of the rights which are made the subject of the claim but they object to the ability of the party to sue or be sued. They are of two kinds: First, pleas to the person of the plaintiff," etc., (Story's Eq. Pl. sec. 722,) such as the plea that plaintiff is an alien enemy. (Ibid. sec. 724.) The pleas in question were pleas to the person and should have been filed in apt time. Appellants did not seek to file these pleas until engaged in the trial of the cause. The chancellor held that said offer came too late and struck the pleas from the files. It was not an abuse of discretion on the part of the chancellor to strike the pleas. They were dilatory pleas, and defendants could not, as a matter of right, file them on the trial of the case. Pleas of incapacity to sue are pleas in abatement. They do not go to the merits of the bill but only tend to an abatement of the suit. (*Fischer* v. *Stiefel,* 179 Ill. 59.) The pleas should have been filed in apt time, and as appellants failed to do so the chancellor did not err in striking said pleas from the files. *Lincoln* v. *McLaughlin,* 74 Ill. 11; *Dow* v. *Blake,* 148 id. 76; *Phenix* v. *Stocks,* 149 id. 319.

Appellants further contend that the verdict of the jury was against the preponderance of the evidence on the issues of testamentary capacity and undue influence.

It appears from the evidence that the testatrix owned a house and two or three lots in Sandoval, in which premises she lived after her return from the State hospital except for a short interval in which she lived in Chicago with her son, the appellee. During the time spent at Sandoval she utilized the lots for gardening. She was a hard worker, a good gardener and produced more than for her personal needs. From some source not clearly disclosed in the evidence she accumulated a few thousand dollars in money. She had no means or source of income shown by the evidence except from her own labor in growing and selling vegetables. She was frugal and saving. She had no in-

clination toward outside matters or acquaintances and was peculiar in her habits. She seemed to be content to live alone and operate her small garden. Six or eight years before her death she made a visit to the appellee in the city of Chicago with the intention of making her home with him. The evidence discloses that she was discontented in Chicago and remained there but a short time. It appears that she stated to some of the witnesses that her son did not treat her well, while to others she said her son did treat her well but that his wife made her wash herself too frequently and to "primp" too much, and that she did not like the noise of the city. After leaving Chicago she came to Sandoval and continued, as before, to raise vegetables, peddle them about and deposit her earnings in the bank. On February 20, 1885, she was adjudged insane by the county court of Marion county and by it committed to the Illinois State hospital for the insane at Anna, where she remained as a patient for a little less than two years, when she was released from that institution and returned to her home at Sandoval. The record fails to disclose that she was discharged as cured. No action was ever taken in the county court after her return to have her civil rights restored.

On the question of the mental condition of the testatrix a large number of witnesses were called both by contestant and proponents. There is direct conflict in their testimony. Some expressed the opinion that she was of sound mind, and others that she was of unsound mind. The test is the mental condition of the testatrix at the time of making the will. (*Campbell* v. *Campbell*, 130 Ill. 466.) Much of the testimony given was directed to a more remote period and leading up to her last illness. An examination of the evidence concerning her condition on the day and at the time of the execution of the will discloses that it preponderates strongly against her then being of disposing mind and memory. One of the witnesses to the will, Katie Casigrandi, testified that the testatrix was unable to talk or sit up; that

she was unconscious most of the time. Jennie Seidel testified that she was at the home of the testatrix on the day the will was made; that she was very low and could not speak. Dr. D. S. Corrigan, the physician who attended her in her last illness, testified that he was in her home treating her when the scrivener came to make the will; that she was scarcely able to talk at that time; that she appeared to be indifferent to her surroundings; that he was compelled to give her medicine as he would a child. He testified positively that at the time the will was executed the testatrix was of unsound mind. An examination of the will itself tends to corroborate this testimony. The first attempt to sign the will appears to have resulted in an illegible scribble at a place not intended for her signature.

While physical weakness does not, of itself, render a person mentally incapable of making a will, such weakness may be considered by the jury on the issue of testamentary capacity. (*Smith* v. *Henline,* 174 Ill. 184.) The rule as to what is a proper test of testamentary capacity was laid down by this court in *Campbell* v. *Campbell, supra,* after a review of many authorities, as follows: "The true inquiry in every case therefore is, did the person whose testamentary capacity is questioned, have, at the time of making his will, such mind and memory as enabled him to understand the business in which he was then engaged and the effect of the disposition made by him of his property. If he did he was possessed of the sound mind and memory required by the statute; and all degrees of impairment of the mental faculties, or dementia, whether senile or produced by other causes, which destroy this testamentary capacity, will disqualify, whether it has reached the stage of absolute imbecility or not." This rule has been adhered to in this State since that decision. (*Owen* v. *Crumbaugh,* 228 Ill. 380; *Drum* v. *Capps,* 240 id. 524.) Where the testimony is conflicting and the verdict of the jury is not clearly against the weight of the evidence the finding of the jury must be

regarded as conclusive. (*Smith* v. *Henline, supra; Calvert* v. *Carpenter,* 96 Ill. 63; *Buchanan* v. *McLennan,* 105 id. 56; *Greene* v. *Greene,* 145 id. 264.) Upon a careful review of the testimony we are of the opinion that the jury were justified in finding against the will on the issue of testamentary capacity.

The record is by no means free from doubt on the issue of undue influence. The appellant Louis Birkley is a nephew of Martha Gickoni and at one time lived in Sandoval but at the time of her death lived at Nashville, Illinois. A few days before the will was executed, Mrs. Pierce, mother-in-law of Birkley, asked him by telephone to come to Sandoval. Birkley came on the first train, reaching there about eleven o'clock the next morning. This was the first knowledge he had of the sickness of Mrs. Gickoni, although she had at that time been sick about two weeks. Birkley secured appellant Reinhardt, a banker in the village of Sandoval, to prepare the will in question. At Birkley's request Reinhardt came to the home of Mrs. Gickoni. This is substantially all the evidence on the issue of undue influence, and if that were the only issue in the case we would be inclined to hold that the contestant had not overcome the *prima facie* proof of proponents. As the testatrix was of unsound mind, however, the issue of undue influence becomes no longer material.

Appellants assign as error the giving and refusing of certain instructions. We have read these instructions, together with all instructions given, and are of the view that the jury were fairly and fully instructed.

There being no reversible error in the record the decree of the circuit court will be affirmed.     *Decree affirmed.*