(No. 12992.—Judgment affirmed.)
VIRGIL CHANDLER *et al.* Appellees, *vs.* KATHERINE FISHER, Appellant.

*Opinion filed December 17, 1919.*

1. WILLS—*on appeal to circuit court proponents are not bound by testimony of subscribing witnesses.* Under section 13 of the Wills act, on appeal to the circuit court from an order of probate the proponents of the will may support the same by any evidence competent to establish a will in chancery, and they are neither limited nor bound by the testimony of the subscribing witnesses.

2. SAME—*on appeal from order of probate, contestants of will are confined to the testimony of subscribing witnesses and to cross-examination.* On appeal to the circuit court from an order of probate the contestants of the will are confined to the testimony of the subscribing witnesses and to the cross-examination of other witnesses offered by the proponents on the question of the mental condition of the testator.

3. SAME—*subscribing witnesses are not expert witnesses on the question of mental capacity.* The subscribing witnesses to a will are not expert witnesses as to the mental capacity of the testator at the time of the execution of the will, and their opinions are not entitled to any more consideration than those of other witnesses merely because they are attesting witnesses.

4. SAME—*capacity to transact business is best evidence of sound mind and memory.* The best evidence of a testator's soundness of mind and memory is positive testimony that he always transacted his ordinary business intelligently.

5. SAME—*what proof of mental capacity is sufficient to entitle will to probate.* To entitle a will to probate on the issue of mental capacity of the testator it is sufficient to prove that at the time he executed the will he had sufficient mind to understand the particu-

lar business in which he was engaged, to remember the natural objects of his bounty, to recall to mind his property and to make disposition of it understandingly, according to some purpose in his mind.

6. SAME—*proof of mental condition before and after making will is competent.* Proof of the mental condition of the testator prior and subsequent to the making of the will is competent for the purpose of establishing his mental capacity at the time the will was executed.

7. SAME—*proof of old age and childishness does not establish a want of testamentary capacity.* Proof that the testator was enfeebled from the usual infirmities of old age and that he was childish does not, of itself, establish a want of testamentary capacity.

8. SAME—*when opinion of lay witness on question of sanity is entitled to but little weight.* The opinion of a witness who is not an expert that a person is of unsound mind is entitled to but little weight if it is not based upon circumstances stated by him which induce a reasonable belief of insanity.

9. SAME—*proponents are not compelled to produce other than attesting witnesses.* On appeal to the circuit court the statute gives the proponents the privilege of introducing witnesses other than the subscribing witnesses; but the fact that certain other persons who were present when the will was attested are not called by the proponents to testify raises no presumption that they would have corroborated the mere unsupported opinions of the attesting witnesses that the testator was of unsound mind.

10. SAME—*attesting witnesses need not sign in presence of each other.* There is no requirement in the Wills act that the two attesting witnesses shall sign the will in the presence of each other.

APPEAL from the Circuit Court of Henderson county; the Hon. ROBERT J. GRIER, Judge, presiding.

O'HARRAS, WOOD & WALKER, and M. E. NOLAN, for appellant.

SCOFIELD, HARTZELL & CALIFF, and JAMES W. GORDON, guardian *ad litem,* for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This appeal is prosecuted by Katherine Fisher to reverse the order and judgment of the circuit court of Henderson county admitting the will of David Bryans, deceased,

to probate. The cause was heretofore before this court for review of an order dismissing the appeal in this case from the county court to the circuit court of said county. The decision of this court reversing the former judgment of the circuit court and remanding the cause for hearing upon the merits is reported in *Chandler* v. *Fisher,* 285 Ill. 57, reference to which is made for a more complete statement of the case.

It is first alleged by appellant that there is no proof in the record of the mental capacity of the testator to make a will at the time it was executed. At the time the testator executed his will, July 27, 1909, he was near eighty years of age. On that date he went to the home of his neighbor, George A. Riley, with the instrument in question already prepared by himself or by another for him and signed by himself, and stated to Riley that it was his will and asked him to sign it as a witness. He then went to the home of another neighbor, Archie L. Welch, and made the same statement to Welch and asked him to sign the instrument as a witness. He then went to the home of a third neighbor, Gus A. Johnson, and made the same statement and request, in substance, to Johnson. All three of his neighbors signed the will in the presence of the testator, as requested by him, and there is no question as to the fact that the will was thus witnessed in the presence of the testator and that the testator saw them write their names as such witnesses. The witnesses did not sign the will in the presence of each other, but each one of them attested the will out of the presence of both the other two attesting witnesses.

Gus A. Johnson testified that he had known the testator about seven years prior to 1909 and lived one-half mile from him; that the testator came to his house and said he had a will that he wanted him to sign as a witness; that the testator laid it on the table and witness signed it in his presence and noticed the signature of the testator to the will at the time he signed as a witness. He was then asked

if he believed that David Bryans was then of sound mind and memory, and replied, "No; he was getting pretty old."

The testimony of George A. Riley on the question of the mental capacity of the testator is, in substance, that he had known him about forty-seven years, never lived farther than ten or twelve miles from him, and had lived on a farm adjoining that of the testator for six years just preceding the signing of the will; that when the testator drove up to his house on that day he asked him to come in, and the testator replied that he didn't have time; that he laid the will on his lap or knee and asked witness to sign it, and he signed it; that he said he wanted to fix his property so his sons-in-law couldn't spend it away from his daughters, and that that was about all he said about it. He further testified that he didn't consider that the testator's memory was in very good condition, and that he was mad and "out of sorts" and very nervous.

The other attesting witness, Welch, testified that Bryans asked him to sign the instrument as his last will and testament as a witness, and that he had known Bryans as long as he could remember. When interrogated as to his belief on the question of soundness of mind and memory of Bryans, he answered that he could not swear exactly; that he did not think he was of sound mind and memory but was more or less childish; that it was hard for him to say whether Bryans knew what property he had and what he wanted to do with it, but that Bryans certainly thought he knew; that Bryans was not one he would call of unsound mind but was what he would call childish. He further testified that he saw Bryans generally as often as once a week and sometimes oftener and talked to him frequently; that at the time he witnessed the will Bryans was doing truck work on his farm, and that he was in about his usual condition, mentally, on the day he signed his will; that he was about as childish as the average man at his age and that he wouldn't consider him capable of making

a deed or knowing of his property at that time; that he does not consider a childish person capable of transacting ordinary affairs of life at all times, and that he did not consider Bryans capable of transacting the ordinary affairs of life at all times.

The attestation clause of the will is, in substance, that it was subscribed by David Bryans, the testator, in the presence of the attesting witnesses, and was at the same time declared by him to be his last will and testament, and that the attesting witnesses at his request signed their names thereto in his presence as attesting witnesses.

Nine other witnesses were called by the proponents of the will who had known the testator intimately for a number of years. Two of them were bankers with whom the testator did banking business, and they testified that he had deposits with them and transacted his banking business with them during the years 1908, 1909 and 1910. Another was a grain dealer, who testified that the testator did business with him during the years 1908, 1909 and 1910. Another was a lawyer in active practice, who testified that the testator was a client of his and that he frequently visited his office in the years 1908 and 1909, and that in the latter year, both before and after July, he consulted witness on legal matters in which he was interested. The other five witnesses were farmers and near neighbors who saw the testator often, and some of them visited him often. Several of them had transacted business with him and had talked with him about various matters connected with farming and truck raising. From the testimony of these witnesses it appears clearly that the deceased had transacted his own business with his banks, with his lawyer, with his grain dealer, and with various other parties to whom he had sold hogs, cattle, apples and other farm produce. Many of these witnesses knew him continuously until his death, in February, 1917. All of these witnesses testified that the testator was a very bright and clear-minded man until his death, was

well posted on the current topics of the day and talked
politics and other matters a great deal. They are positive
in their testimony that while he grew weaker, physically,
as he grew older, his mind remained unusually clear until
his death, and that they never noticed any change in his
mind or any loss of memory at any time during their ac-
quaintance. While no one of these witnesses was able to
state from memory that he saw the testator on the day he
executed his will, yet several of them are able to state that
they saw him and talked with him in the months of May
and June, and probably in July, of that year, and in the
months following July, in which months he was shown to
be transacting his usual business. They all testified posi-
tively that the testator was of sound mind and memory
and mentally competent to transact, and did transact, his
ordinary and usual business affairs.

Since the amendment of 1909 to section 13 of the act
on wills it is lawful for the party seeking to probate a will
to support the same, on hearing in the circuit court, by any
evidence competent to establish a will in chancery, if the
probate of such will has either been allowed or refused by
the county or probate court and an appeal taken to the cir-
cuit court from such order. By section 2 of the same stat-
ute the proponents of a will in the county or circuit court
are required to present the testimony of at least two attest-
ing witnesses that the requirements of the statute were com-
plied with in executing the will, and also to present their
testimony as to whether or not they believed the testator
was of sound mind and memory. The contestants of the
will on an appeal to the circuit court in such probate pro-
ceedings are confined to the testimony of the subscribing
witnesses and to the cross-examination of the other wit-
nesses offered by the proponents on the question of the men-
tal condition of the testator. (*Mayer* v. *Schrenkler*, 286
Ill. 324.) The rule is now clearly established in this State
that on an appeal from the county court to the circuit court

in a proceeding to probate a will the proponents are neither limited nor bound by the testimony of the subscribing witnesses. *In re Will of Barry,* 219 Ill. 391; *In re Will, of Simon,* 266 id. 304.

We have given the testimony of the three subscribing witnesses in full so far as it related to the question of mental soundness of the testator. No one of them testified to a single act of the testator or to a single expression of any kind by him that indicated insanity. The conversations with the testator and these witnesses on that day are given in full. Without any apparent reason for the conclusion that the testator was not of sound mind and memory except the fact that he was old and somewhat childish or out of humor, these witnesses have expressed the opinion, in substance, that he was not able to transact ordinary business and that he was of unsound mind and memory,—or at least two of them have. They are not expert witnesses but are mere lay witnesses, and are not entitled to any more consideration than other lay witnesses by reason of the fact that they are attesting witnesses. We are disposed to consider these witnesses as absolutely honest and truthful and that they expressed their best judgment on the question of the mental capacity of the testator, but appellees are entitled to have the testimony of the other nine witnesses considered, and when that is done we have no hesitancy in saying that the judgment of the circuit court must be affirmed. They knew the testator no better than the attesting witnesses, but they relate facts upon which they base their judgments and opinions, and their testimony is absolutely convincing that the testator was of sound mind and memory and executed his will while in that condition. The best evidence of a person's soundness of mind and memory is positive testimony that he can and does transact ordinary business, and that he transacts it intelligently and has continuously done so for years, both before and at the time his mental soundness is questioned. The record warrants

the conclusion that the nine witnesses based their judgment that the testator was of sound mind and memory upon such evidence, and upon the further fact that they had never at any time discovered any evidence or circumstances indicating unsoundness of mind or memory. They make out a strong case in favor of the proposition that the testator was sound in mind and memory. To entitle the will to probate it was only necessary for appellees to prove that the testator, at the time he executed the will, had sufficient mind and memory to enable him to understand the particular business in which he was then engaged, and that he was able to remember the natural objects of his bounty, recall to mind his property and to make disposition of it understandingly, according to some purpose or plan in his mind. The will itself and the testimony in the record clearly show that the testator was competent to make the will and that it was properly admitted to probate.

Proof of mental condition of the testator prior and subsequent to the time of the making of the will is competent for the purpose of establishing mental capacity at the time the will was executed. (*Craig* v. *Southard,* 148 Ill. 37; *Nieman* v. *Schnitker,* 181 id. 400.) Proof that the testator was enfeebled by the usual infirmities of old age and that he was childish does not establish a want of testamentary capacity. A witness who is not an expert may detail facts and circumstances upon which he bases an opinion of unsoundness of mind, but the mere opinion of such witness not based upon facts or circumstances which would induce a reasonable belief of insanity is entitled to but slight or no weight upon such question. *Graham* v. *Deuterman,* 244 Ill. 124; *Brainard* v. *Brainard,* 259 id. 613.

As it appears from the record that the wife of Gus A. Johnson and the father and mother of Archie L. Welch were present at the time the testator acknowledged the will it is argued that appellees were required to produce these witnesses in the circuit court, and having failed to do so

the presumption should be indulged that their testimony would have been corroborative of that of those two subscribing witnesses. If that be true it could not be presumed that such witnesses could have testified to more facts upon which to base a judgment of unsoundness of mind of the testator than did the subscribing witnesses themselves. The mere opinions of the three proposed witnesses as to mental unsoundness, based on such facts, would not have availed to change the result had they so testified. As a matter of fact, those witnesses were not shown to be within the jurisdiction of the court and able to testify on the trial, and if they had been, we know of no rule that would compel appellees to produce such witnesses, whether favorable or unfavorable. The statute only compels the attendance and testimony of the subscribing witnesses, and gives the proponents the privilege of introducing such other witnesses as they may choose, to establish the will.

The second ground urged by appellant for a reversal of the judgment is not tenable. The attesting witnesses did not sign as witnesses in the presence of each other at the time the will was acknowledged, but that is not necessary under our statute on wills. This court has twice considered that question and has as many times declared that it is not necessary that the two attesting witnesses should witness the will in the presence of each other and that the statute contains no such requirement. (*Flinn* v. *Owen,* 58 Ill. 111; *Rupp* v. *Jones,* 289 id. 596.) Similar statutes have been construed in the same manner by the other courts of this country who have passed on this question. 1 Underhill on Wills, sec. 197; 40 Cyc. 1125.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*