(No. 12586.—Judgment affirmed.)

AVIS JENNINGS VALENTINE *et al.* Plaintiffs in Error, *vs.* THE SECOND BAPTIST CHURCH OF CHICAGO *et al.* Defendants in Error.

*Opinion filed April 21, 1920.*

1. WILLS—*what is best test of capacity to execute a will.* The best test as to whether a testator or testatrix is competent to execute a will is the ability to transact his or her business matters intelligently and in a businesslike manner.

2. SAME—*opinion of a lay witness on mental capacity must be based on facts.* The opinion of a lay witness that a person is of unsound mind must be considered of very little weight where it is not based upon circumstances stated by the witness which induce a reasonable belief of insanity.

3. SAME—*when omission from attestation clause is not fatal.* Where an attestation clause recites that the will was declared by the testatrix "to be her last will in our presence, and we at her request, and in her presence and in the presence of each other, as witnesses thereto," which statement is followed by the signatures of the attesting witnesses, the apparent omission between the words "other" and "as" is not fatal where there is other proof of due execution of the will.

4. SAME—*what proof is prima facie sufficient to admit a will to probate.* Proof that the signature to a will is the genuine signature of the testator, that he acknowledged it in the presence of two witnesses, and that he was of sound mind and memory, makes a *prima facie* case in favor of the due execution of the will.

5. SAME—*when it will be presumed will was signed when attested.* The fact that a will was signed at the time it was attested

is essential but it is not essential to prove that fact by any number of witnesses, and the testator's request of witnesses to attest an instrument as his will is equivalent to an acknowledgment that he has signed it, in the absence of evidence to the contrary.

6. SAME—*attesting witness need not see signature of testator.* It is not necessary that a subscribing witness shall know the contents of a will or any part thereof or that he shall see the name of the testator signed to the will to make the execution and attestation sufficient, if the will, as a matter of fact, is signed by the testator at the time it is acknowledged by him before the witnesses to be his will.

7. SAME—*subscribing witnesses are not more credible than other witnesses.* The subscribing witnesses to a will are not to be regarded as more or less truthful than other witnesses because they are subscribing witnesses, and their testimony that the will was not signed when they signed as witnesses is not conclusive.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. G. F. BARRETT, Judge, presiding.

WILLARD J. DIXON, for plaintiffs in error.

HOLT, CUTTING & SIDLEY, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Alice J. Whitney died testate at Chicago on February 8, 1916. Her estate consisted of personal property worth about $3000 and several parcels of real estate of the value of about $15,000. She executed her will on January 7, 1916, very shortly after the death of her husband. William H. Holden, an attorney at law of Chicago, was nominated by her will as executor and trustee thereunder. Holden also prepared the will. The will, or the instrument purporting to be such will, was filed for probate in the probate court of Cook county and that court denied probate of the same. On appeal to the circuit court of Cook county that court admitted the instrument to probate as the last will and testament of the testatrix. This writ of error is prosecuted by Avis Jennings Valentine, Charlotte Jennings and Al-

myra J. Carter, as heirs-at-law of the testatrix, to review the order of that court admitting the will to probate.

Only two contentions are made by plaintiffs in error in this court: (1) That the testatrix was not of sound mind and disposing memory when she executed the will; and (2) that the proof in the record does not show due execution of the will in accordance with our statute on wills.

We think the manifest weight of the evidence clearly shows that the testatrix was of sound mind and disposing memory at the time she executed her will. This fact was well established by the testimony of Rev. John M. Dean, Dr. Eugene F. Daum, Matthew Hodges, S. B. Cassatt and Leon Stout. Rev. Dean is a Baptist clergyman and was engaged in evangelistic work and working with the Y. M. C. A. in the army camps when he testified. He had formerly been pastor of the Second Baptist Church of Chicago, at the corner of Jackson boulevard and Lincoln street, of which church the testatrix was a member. He had known the testatrix for many years and was present with her and her attorney and executor during the whole time the will was being prepared by the attorney at her home and was present when the will was executed and when attested by the witnesses. Dr. Daum is a physician and surgeon who had practiced his profession for eighteen years in Chicago. He knew the testatrix from the summer of 1914 until her death and had attended her professionally during that time about twenty times. He saw her twice after the death of her husband and near the time she executed the will and talked with her about her physical condition and also about books and on general topics, at which times he learned that she had some literary pretensions and mentioned the same to him. Hodges is a plumber and had known Mrs. Whitney for twenty years prior to her death, and during that time had business relations with her, saw her and visited with her frequently, and visited her and talked with her a few days after the death of her husband, which was near the time

she made her will. Cassatt is a coupon pressman, making railroad tickets, was a neighbor of the testatrix and had known her for about two years prior to her death and saw her frequently during that time up to and on the day of her husband's death.. These four witnesses all testified positively, in substance, that they never at any time discovered anything in the conduct or talk of Mrs. Whitney that in any way indicated that she was of unsound mind. They unhesitatingly gave it as their opinion that she was of sound mind and disposing memory, and their evidence is convincing. Stout is an attorney at law and had only met her twice,—once on January 18, when he visited her for the purpose of having her execute a petition for letters in her husband's estate. He asked her all necessary questions regarding the names and residences of the several heirs of her husband, who appear to have lived in different States, to enable him to properly write the petition. She gave him all the information he desired and did it in an intelligent manner.

Rev. Dean testified that previous to the day Mrs. Whitney executed her will she had hunted up three written memoranda made by her husband in his lifetime, which disclosed the joint wish of himself and wife, and asked him to carry them to her attorney, Holden, and have him come and prepare her will. She was very anxious that her will should conform to these memoranda, which expressed the desire of her husband as to how he and she should dispose of their property. The attorney wrote the will in clauses. There were two legacies bequeathed to charitable institutions in addition to the one bequeathed to the Second Baptist Church. There were about twelve other legacies bequeathed to private individuals. As each clause or legacy was provided for, Holden would stop and consult Mrs. Whitney to ascertain if it was written as she desired it, and when she ascertained that the legacy as written by Holden corresponded with the memoranda prepared by her husband she gave her

assent to every clause just after it was written and her approval of the entire will after it had been written.

The only thing discovered by any of the above witnesses that would indicate any defect in Mrs. Whitney, bodily or mentally, was the fact that she was not very strong physically and not in good health and was suffering from paralysis of the face and throat, which made it difficult for her to articulate or speak certain words. In talking she would hesitate at such words and stammer. Her mind, according to these witnesses, was as clear as ever and she transacted business matters intelligently and with dispatch. One of the very best tests as to whether or not a testator or testatrix is competent to execute a will is the ability or want of ability to actually transact his or her business matters intelligently and in a businesslike manner. This woman, according to the testimony, could and did converse upon any and all subjects as they were suggested in conversations with her, and she had the ability to transact business matters intelligently and in a businesslike way, and did so.

The only evidence opposed to the foregoing for the proponents of the will was that of the two subscribing witnesses,—two women who were friends and near neighbors of the testatrix and who were called to witness the attestation of this will, no doubt, because of confidence in their friendship and their knowledge of the ability of the testatrix to make a will. These witnesses testified very positively that the testatrix was not of sound mind and memory. It will not be necessary to go into details farther than to say that these witnesses could not give any satisfactory reason why they considered this woman of unsound mind and memory, except their general statement that "she rambled, was very disconnected and stammered in her conversations" with them, and was feeble and in bad health and was very much grieved by the death of her husband. Mrs. Wodack expressly stated: "I cannot specify one conversation I ever had with Mrs. Whitney in which she did anything out of

the usual and ordinary run of conversations, but in her general conversations she carried on,—in fact she rambled, very disconnected." She again says that she had a conversation with Mrs. Whitney the very morning before she witnessed her will, and she used these words, "I do not recall anything peculiar or disconnected about it." Mrs. George's testimony was in substance and in manner much the same as Mrs. Wodack's on this question. She expressly used these words: "I cannot state a particular instance of things she said that made me think she was not of sound mind and memory, but sometimes when she talked she would ramble and forget what she was saying; I could not tell any one thing she said that was rambling." The physical weakness and inability of the testatrix to articulate and speak in her usual and ordinary manner was, perhaps, sufficient foundation, in their judgment, for these two women to express their opinion on the testatrix's insanity as they did. Their disposition to be positive is, no doubt, aided by their judgment that the will of the testatrix is not what it ought to have been. But, in any event, their testimony is not sufficient to overcome the positive testimony in this record as to the sanity of the testatrix. In fact, the inability of these two women neighbors to call to mind a single instance or a single sentence in conversations with the testatrix which of itself showed unsoundness of mind rather strengthens the case made by the proponents. If these two neighbor women, who were with testatrix almost daily, cannot furnish by their testimony real evidences of insanity, we must conclude that no such insanity or unsoundness of mind existed, because the opinions of lay witnesses that a person is insane or of unsound mind must be considered of but little weight if not based upon circumstances stated by them which induce a reasonable belief of insanity. (*Graham* v. *Deuterman,* 244 Ill. 124; *Brainard* v. *Brainard,* 259 id. 613; *Chandler* v. *Fisher,* 290 id. 440.) We do not intend to suggest or intimate that the two women in question are un-

worthy of belief, but we merely reiterate the self-evident proposition that an opinion of a lay witness unsupported by any facts or good reasons for the same cannot be considered as of much weight upon any question. We therefore unhesitatingly hold that the testatrix was proved to be of sound mind and memory.

The holding of the circuit court that the will was properly executed and attested under our statute on wills is supported by the evidence. The testimony clearly shows that the will was read and re-read to the testatrix, as already indicated, and that she assented to each and every clause as written and to the whole will as expressing the provisions that she desired to be written in the will. Rev. Dean testified that he was present during the preparation of and assenting to the will, and he further testified that the will was signed by the testatrix before the two subscribing witnesses aforesaid came to witness the will. The will was followed by the attestation clause, signed by the attesting witnesses, viz.: "The foregoing was declared by Alice J. Whitney to be her last will in our presence, and we at her request, and in her presence and in the presence of each other, as witnesses thereto." It is evident that there was something omitted through a clerical error of the draftsman in the last line of this attestation clause, which should have been inserted between the words "other" and "as." But the attestation clause is a declaration signed by the subscribing witnesses that the instrument was declared by the testatrix to be her last will in the presence of the attesting witnesses. The testimony of these two attesting witnesses is also positive and to the effect that the testatrix did acknowledge or declare in their presence that the instrument was her last will and testament. These witnesses also identified the instrument as the one declared by the testatrix, and so witnessed by them, as her last will and testament. They both testified that they signed the will as attesting witnesses in the presence of each other and in the presence of the tes-

tatrix. There was other evidence introduced besides the testimony of Rev. Dean, the Baptist clergyman, that the instrument in question did on the day of trial bear the genuine signature of the testatrix. This proof made a sufficient *prima facie* case to admit the will to probate. This court has frequently declared that proof that the signature to the will produced is the genuine signature of the testator or testatrix, that the testator or testatrix acknowledged the same to be his or her act and deed (or last will) in the presence of two witnesses, and that at the time he or she was of sound mind and disposing memory, makes a *prima facie* case in favor of the due execution of the will, in accordance with the second provision of section 2 of our statute on wills, providing for proof of execution of wills. *Gould* v. *Theological Seminary,* 189 Ill. 282; *Hobart* v. *Hobart,* 154 id. 610; *In re will of Barry,* 219 id. 391; *Harp* v. *Parr,* 168 id. 459; *Thompson* v. *Karme,* 268 id. 168.

We are met with the unusual circumstance in this case that the two subscribing witnesses positively testified in the circuit court that the testatrix's name was not signed to the will when they witnessed it for her. · They are even very positive in their testimony that they looked for the signature of the testatrix at the place where it now appears and that they did not see it then and that it was not then signed to the will. They even testified that they commented on that fact as they were going away from the place where the will was executed and after it was executed. Their testimony does not overcome the case made out by the proponents. Their testimony is somewhat impeached by the fact that they were as positive as they could be of these facts in the trial before the circuit court, but their testimony was not of that positive character when they testified in the probate court. It will not be necessary to go into details. It was proved by three witnesses that the testatrix acknowledged the will to be her last will and testament in the presence of the witnesses. The fact that the will was signed at the

time she acknowledged it as her will is essential, but it is not essential to prove that fact by any number of witnesses. When a testator acknowledges an instrument to be his will, it will be presumed, in the absence of evidence to the contrary, that he had signed it, because the signature is necessary to justify him in calling it his will. It would not be a will without such signature. So when a testator requests witnesses to attest an instrument as his will it is equivalent to his acknowledgment that he has signed it as a will. (*Hobart* v. *Hobart, supra.*) It has been frequently ruled that it is not necessary that a subscribing witness shall know the contents of the will or any part thereof or that he shall see the name of the testator signed to the will to make the execution and attestation sufficient, if the will, as a matter of fact, is signed by the testator at the time it is acknowledged or declared by him before the witnesses to be his will. The probate of this will, therefore, hangs upon the single proposition whether or not the preponderance of the evidence shows that the testatrix signed it before she acknowledged it. In addition to the *prima facie* case made, Rev. Dean is very positive that the testatrix did execute it before the attesting witnesses appeared to attest it, and we are well satisfied that is the fact. The subscribing witnesses to a will are not to be regarded as more or less truthful than other witnesses because they are subscribing witnesses. Like all other witnesses, their recollection is sometimes very bad and sometimes remarkably good, according to their desires and prejudices in the case, if any they happen to have. Their testimony in this case is overcome by the other evidence. The fact is undisputed that the testatrix did sign the will, and the most reasonable conclusion is that it was signed when witnessed.

The order and judgment of the circuit court are affirmed.

*Judgment affirmed.*