(No. 19222.— )
ARISTA FLANIGON, Appellant, *vs.* J. ELMER SMITH *et al.* Appellees.

*Opinion filed December 20, 1929—Rehearing denied Feb. 5, 1930.*

WILLIAM A. KANE, JOHN PEARL, and CHARLES P. KANE, for appellant.

HERRICK & HERRICK, and HALL, MARTIN, HOOSE & DEPEW, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, Arista Flanigon, filed his bill in the circuit court of McLean county against appellees to contest the will of Marion O. Flanigon on the ground of the mental incapacity of the testator and on the ground that J. Elmer Smith and Clara O'Leary used undue influence in securing its execution. Upon issue being joined there was a trial by jury. At the close of the evidence the court directed a verdict in favor of appellees, and an appeal was prosecuted to this court.

As grounds for reversal it is urged that the court improperly directed a verdict for appellees, improperly withdrew from the jury the question of undue influence, improperly excluded evidence which tended to prove undue influence or the existence of a fiduciary relation between the testator and Clara O'Leary and J. Elmer Smith, and that the existence of a fiduciary relation placed upon appellees the burden of showing there was no undue influence.

The evidence shows that the testator, who lived in Bellflower, in McLean county, for thirty years, died February 13, 1927, at the age of eighty-one years, leaving as his only heirs-at-law, appellant, Arista Flanigon, a half-brother, who lived in Oklahoma; Christina Shocklin, a half-sister, who lived in California; and Annie Arnold, who lived in Florida and was the daughter of a deceased half-sister. At the time of his death the testator owned about 1700 acres of land in Illinois, Indiana and Ohio and about $80,000 of personal property.

The will was executed January 25, 1926, and gave (2) to Clara O'Leary, his housekeeper, the homestead in Bell-

flower, the land adjacent thereto, all household goods and furniture, two cows, two automobiles and 80 acres of land in McLean county; (3) to appellant, $200; (4) to Avis Risk, daughter of appellant, $10,000; (5) to Christina Shocklin, the half-sister, $10,000; (6) to Annie Arnold, the niece, $2000; (7) to George P. Coffey, a friend, $9000; (8) to Charles Carson all real estate in Fayette county, Ohio, together with all grain on the premises; (9) to Charles L. Rohde, a tenant, all notes held by the testator against him; (10) to William T. Rohde all notes held by the testator against him; (11) directed the collection of $500 from Harold Smoot due on a loan, for which the testator held no note; (12) gave to J. Elmer Smith, in trust, $40,000, the income to be used for the benefit of George M. Carson, a brother-in-law, and at the death of Carson the fund was to become a part of the residuary estate; (13) the executors were directed to sell all real estate not specifically devised and out of the proceeds pay legacies and debts, the balance to become a part of the residuary estate; (14) directed the executors to collect all notes and to turn the entire estate into money; (15) the residue of the estate was given to the officers of the high and grade schools in school district No. 88 in McLean county in trust for the use of the schools; (16) provided that if any beneficiary under the will should contest it he should take nothing under the will and such share should become a part of the residuary estate; (17) appointed J. Elmer Smith and Clara O'Leary executor and executrix. The will was witnessed by seven persons, all of whom testified for appellees except one who was not present at the trial.

The evidence shows that the testator's wife died about nine years prior to his death. For some years prior to her death she had been an invalid. Two years before she died, appellee Clara O'Leary, who was a niece, went to the home to take care of the wife, and after the death of the wife

she remained as housekeeper for the testator until his death. During the last few years of the testator's life she helped him in his business affairs, made purchases, paid bills, wrote checks and letters, made deposits and kept the books and accounts. The testator was an active, capable business man and by his own efforts accumulated a large amount of property. He owned considerable farm lands in McLean county and elsewhere, had an interest in grain elevators, was a stockholder, director, vice-president and chairman of the board of directors of the Exchange Bank of Bellflower, and took an active part in the management of its financial affairs. Appellee Smith was the president of this bank. The testator rented his farms, collected the rents, sold his grain, traded on the Chicago Board of Trade, loaned money, bought material for the buildings on his farms, let the contracts for the erection of the buildings, bought and traded automobiles, read the newspapers, discussed current topics, made trips to various parts of the country by rail and automobile, knew who were his next of kin, what property he owned, where it was located and what was its value. During the last few years of his life he had heart trouble, arterial sclerosis and chronic neuritis. Dr. Jenson, of Saybrook, had been his family physician for nine years. About three weeks before the will was drawn the testator took the "flu." He was confined to his home and a part of the time to his bed until a week or ten days after the will was executed, during which time Dr. Jenson visited him daily. After that time the testator was able to be up, went downtown and attended to his business, although he was very weak and feeble. This was his daily routine for about a year prior to his death.

The evidence does not clearly show the preliminary transactions prior to the making of the will. At the time it was made the testator was confined to his bed. The doctor testified that he did not expect him to die at that time, but the doctor gave him injections of digitalis in his

arm to stimulate his heart. The testator prior to his illness had talked to some of his friends about making a will, and on January 25, 1926, Lyle Herrick, a layman, went to Bellflower. Who called him does not appear from the evidence. He first went to the home of the testator and then to the bank. The will was in the handwriting of Herrick. It was drawn in the bank and the seven persons who witnessed it were called by appellee Smith. It was executed about six o'clock in the evening, in the testator's bed-room. Only the testator, Herrick and the witnesses were present, including Dr. Jenson. Neither Smith nor Mrs. O'Leary was present. The will was read to the testator. He said it was his will, he wanted to execute it, he asked the persons present to witness it, and it was executed as provided by statute. On the trial twenty-seven witnesses testified on behalf of appellees that the testator was of sound mind and memory and knew what he was doing at the time he executed the will. Among the witnesses were persons who had known the testator about fifty years. They had business transactions with him and many of them had seen and talked with him almost daily.

The undue influence which will invalidate a will must be of such a character as to deprive the testator of free agency. It must be such as to destroy the freedom of the testator's purpose and render the instrument more the will of another than his own. It must be directly connected with the execution of the will and must operate at the time it is made, producing a perversion of the testator's mind. It must be a species of fraud. Advice or persuasion will not vitiate a will freely and understandingly made. The influence resulting from love or affection which does not seek to control the will of the testator is not undue influence. (*Pollock* v. *Pollock*, 328 Ill. 179; *Grosh* v. *Acom*, 325 id. 474; *Jones* v. *Worth*, 319 id. 235; *Cunningham* v. *Dorwart*, 317 id. 451.) No presumption arises from the existence of a fiduciary relation that a will in

337—37

favor of a fiduciary was executed as the result of the fiduciary's undue influence unless the person who occupied the confidential relation prepared the will or participated in the preparation and execution of it, in which case the burden is upon him to show that the execution of the will was the free and voluntary act of the testator. *Bailey* v. *Oberlander,* 329 Ill. 568; *Buerger* v. *Buerger,* 317 id. 401; *Britt* v. *Darnell,* 315 id. 285.

Even if it be conceded that Smith and Mrs. O'Leary sustained a fiduciary relation to the testator, there is no evidence in this record which brings either of them within the rules above announced. Smith was a business associate and friend of the testator. No doubt each had confidence in the other. Smith took nothing under the will although he was appointed as executor and trustee. Mrs. O'Leary was the testator's housekeeper and had been for many years and he was appreciative of what she had done for him. She had aided him in his business affairs and she took property under the will and was named as executrix. There is no evidence that either Smith or Mrs. O'Leary had anything to do with either the preparation or the execution of the will, or that they dictated or suggested any of its terms, or that they even knew what the will provided. Smith may have called the lawyer who drew the will and may have asked the persons to be present and witness it, but this, alone, would not be sufficient to render it invalid on the ground of a fiduciary relation and undue influence. (*Michael* v. *Marshall,* 201 Ill. 70.) There was no evidence of undue influence, and the court properly directed a verdict in favor of appellees on that charge.

Several witnesses called by appellant testified that the testator was of sound mind and knew what he was doing when the will was executed. Three or four witnesses testified to certain things said and done by the testator which appellant claims tended to establish that the testator was not of sound mind when the will was executed, that the

evidence of these three or four witnesses was sufficient to entitle appellant to have the jury pass upon the question of the testator's mental competency, and that the court was in error in directing·a verdict in favor of appellees. In a will contest a motion to direct a verdict for the proponents at the close of all the evidence is governed by the same rules as in actions at law. The party resisting the motion is entitled to the benefit of all of the evidence in the case, considered in its most favorable aspect to him, together with all reasonable presumptions to be drawn therefrom. The motion raises the question whether there is any evidence fairly tending to prove the allegations of the bill. Where there is such evidence, the motion to direct a verdict should be overruled. *Peters* v. *Fekete,* 329 Ill. 268; *Grantz* v. *Grantz,* 314 id. 243; *Hettick* v. *Searcy,* 278 id. 116; *Lloyd* v. *Rush,* 273 id. 489; *Geiger* v. *Geiger,* 247 id. 629.

Appellant bases his right to have the question of the mental ability of the testator to execute the will submitted to the jury upon the testimony of J. H. Dunn, Dr. Otto Helmick, Bessie Foster, Mrs. George Carson and Jessie Carson, all of whom testified for appellant, and Ed. Bradbury, who testified for appellees. It will not be necessary to consider in detail the evidence of Bessie Foster, for the reason that she testified that the testator was of sound mind at the time the will was executed.

J. H. Dunn testified he had known the testator for about thirty years but had no conversations with him except on current affairs; that six or seven years ago he tried to rent some land from him; that the testator said he would let him have the land when a tenant vacated it but later said he had forgotten the conversation. The witness, three or four years prior, tried to borrow $1000 from the testator on a mortgage, but he refused to loan the money on the property designated but wanted to loan it on 80 acres of land. There was a mortgage of $5000 on

the land, and the testator wanted this mortgage released so his claim would be a first lien. The witness testified that about four years prior he tried to rent 70 acres from the testator where his son lived, but the testator later did not remember the conversation. The witness testified he talked to the testator about the markets, business conditions and politics, but the testator said he did not know about the markets or business conditions. He testified he made no particular observation as to the mental condition of the testator prior to January, 1926, but knew it quite well. The court refused to permit him to express his opinion as to the mental condition of the testator on the ground that a sufficient foundation had not been laid.

Dr. Helmick was a dentist. He testified that the bank obtained a mortgage on 280 acres of land in Cavalier county, North Dakota. In October, 1925, the mortgage was assigned to the witness and the testator and a bill was filed to foreclose it. The witness testified he had various conversations in the latter part of 1925 with the testator relative to the foreclosure. The testator could not remember the name of the county in which the land was located or the number of acres in the farm and repeatedly asked with reference to these matters. The witness based his opinion as to the mental ability of the testator upon this transaction and stated that he did not think he was of sound mind at that time. On cross-examination the witness was asked the amount of this mortgage, but he did not remember the exact amount but thought it was about $4500.

Mrs. George Carson, whose husband was a beneficiary under the will and a brother-in-law of the testator, testified to two visits which the testator and Mrs. O'Leary made to the home of the witness in Texas. She testified that she had talked freely with the testator during the last four or five years. She did not see him during his sickness in 1925 but saw him afterwards and frequently talked with

him. He and her husband were in business together and they talked business in her presence, but she did not detail any of the conversations. The court refused to permit her to express an opinion as to his mental condition on the ground that a sufficient foundation was not laid.

Jessie Carson, a sister-in-law of the testator, testified she spent her vacations of one week each summer at the testator's house after the death of his wife. She was there in the summer of 1925, again at Christmas, and went there the day after the will was executed and stayed for three weeks. George Coffey, one of the beneficiaries under the will, and appellant, were there. She talked with the testator on various subjects. He talked about his property and his will. He named the various persons who were beneficiaries under the will and the amount he had left to each one. He said he had made out a deed to Mrs. O'Leary for 80 acres of land; that he had given George Coffey $10,000 and that he was going to leave appellant some money; that he had left appellant's daughter $10,000 and that he left something to the Rohde boys. He directed Mrs. O'Leary in business transactions, told her to take certain checks to the bank and deposit them to his account and to give credit on the books to persons who had paid him various amounts. He said he was in considerable pain and wished he was dead so he would be out of his suffering. She testified that there were times when she did not think he was in his right mind after the will was made; that his mind was weak at times; that he would start to talk upon one subject and would not finish the conversation; that she first noticed that his mind was weak, at times, in August, 1926, which was after the will was executed; that he directed Mrs. O'Leary to draw a check in favor of the witness for $500, and that this was evidence of his mental incapacity because he should have made the check larger.

Ed Bradbury, a witness called by appellees, testified that after the will was executed the testator said it did not suit him, that he was going to change it if he ever got able, and that he was going to Bloomington and have a talk with Morrissey about changing the will.

In order to have mental capacity to execute a will a testator does not have to be absolutely of sound mind and memory in every respect. (*Pendarvis* v. *Gibb*, 328 Ill. 282.) All that is required is that he have sufficient mental capacity to comprehend and remember who are the natural objects of his bounty, to comprehend the kind and character of his property, and to make disposition of that property according to some plan formed in his mind. (*Donovan* v. *St. Joseph's Home*, 295 Ill. 125; *Dowdey* v. *Palmer*, 287 id. 42; *McLean* v. *Barnes*, 285 id. 203.) He must understand the particular business in which he is engaged. (*Austin* v. *Austin*, 260 Ill. 299; *Johnson* v. *Farrell*, 215 id. 542.) The test refers to the time of the making of the will. (*Turckheim* v. *Birkley*, 287 Ill. 434; *Down* v. *Comstock*, 318 id. 445; *Buerger* v. *Buerger, supra.*) Before a witness will be allowed to express an opinion as to the mental capacity of the testator it is essential that the witness relate the facts and circumstances which are the basis of his judgment. Whether or not the evidence shows any foundation upon which an opinion may be based is a question of law for the court. (*Jones* v. *Worth, supra; Britt* v. *Darnell, supra; Graham* v. *Deuterman*, 244 Ill. 124.) The opinion of a witness that a person is of unsound mind is of very little, if any, weight, where it is not based upon circumstances stated by the witness which will induce a reasonable belief of unsoundness of mind. *Valentine* v. *Second Baptist Church*, 293 Ill. 71; *Teter* v. *Spooner*, 279 id. 39; *Brainard* v. *Brainard*, 259 id. 613.

When the evidence of J. H. Dunn and Mrs. George Carson is considered in its entirety it is apparent that neither of them testified to such facts and circumstances as

formed a sufficient foundation for the expression of an opinion as to the mental ability of the testator to make a will, and the court properly sustained the objections to the questions calling for such opinion. In fact, the evidence of Dunn is consistent with the exercise of a sound business judgment on the part of the testator. The testator either did not want to do any business with Dunn or he wanted to be safe in so doing, which was evidence of soundness of mind rather than unsoundness. Mrs. George Carson had no business transactions with the testator, but she was present when business affairs were discussed between her husband and the testator. There was nothing in her testimony which indicated incapacity to make a will. The testimony of Dr. Helmick was based entirely upon one business transaction in the latter part of 1925. It was not sufficient basis for the expression of an opinion as to unsoundness of mind, but, on the contrary, showed that the testator was exercising a sound business judgment in filing the bill to foreclose the mortgage, and there was nothing in his failure to remember the name of the county in which the land was located or the number of acres sufficient to justify a conclusion of mental inability to execute a will. The testimony of Jessie Carson related primarily to the condition of the testator's mind in the summer of 1926, after the will was executed. Her testimony was that he was forgetful, his mind was weak, and there were times when she thought he was not of sound mind. She did not testify that he was not of sound mind at the time when the will was executed. The testimony of Bradbury that the testator said the will did not suit him and that he wanted to change it did not indicate incapacity but did indicate that he knew how he wanted to dispose of his property. There was no evidence which fairly tended to show that the testator was incapable of making a will at the time it was executed, and the court was not in error in directing a verdict.

Complaint is made of certain rulings on evidence offered by appellant, but there were no material errors in any of these respects which would be sufficient to work a reversal of the decree.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*