39 LRA 121

### GEORGE HUTCHINSON

*v.*

### JAMES A. HUTCHINSON et al.

*Filed at Ottawa October 29, 1894.*

| 152 | 347 |
| 158 | 350 |
| 159 | 347 |
| 168 | 187 |
| 152 | 347 |
| 94a | 2297 |
| 152 | 347 |
| 194 | 2234 |
| 152 | 347 |
| 107a | 2507 |
| 152 | 347 |
| d215 | 2508 |

1. WILLS—*what is testamentary capacity.* Capacity to transact ordinary business, ability to comprehend objects and subjects of bounty, and freedom from insane delusions specially affecting the power of disposition, constitute testamentary capacity, even though the mind is not perfectly balanced.

2. COSTS—*guardian's solicitor's fees and expenses in chancery.* A complainant in chancery who procures the appointment of a guardian *ad litem* for a minor defendant is not, since the amendment of section 6 of the Chancery Practice act, (Laws of 1871–72, p. 329,) compelled to pay, as costs, such guardian's fees and other expenses.

3. SAME—*fees of physicians and experts.* In respect to compensation other than the *per diem* and mileage allowed ordinary witnesses, physicians and experts stand upon the same footing, and such compensation cannot be awarded as costs in chancery.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Thomas Hutchinson died in Chicago on December 2, 1887. He left him surviving no widow or children, or descendants of children. His next of kin were two brothers, George Hutchinson and James A. Hutchinson, and each of these brothers had children. One of the children of James A. Hutchinson was named Thomas Hutchinson, and he had been named for the decedent.

The deceased left a last will and testament, dated September 8, 1886, by which provision is made for the purchase of a cemetery lot and the erection of an appropriate monument, and for the payment of debts. The will then bequeaths $5000 to his brother George Hutchinson, $5000 to his brother James A. Hutchinson, and another $5000 to his friend John R. Walsh, in trust for Minnie Mae Knapp. All the remainder of the testator's estate is

bequeathed to the Fidelity Insurance, Trust and Safe Deposit Company of Philadelphia, in trust for his nephew and namesake, Thomas Hutchinson. The will contains particular directions as to the manner in which the trust estate shall be handled, provides for the payment to the father or legal guardian of the said Thomas Hutchinson of an amount sufficient to support, maintain and educate him in a manner .befitting his station in life, and authorizes and directs the trustee, when his nephew Thomas Hutchinson shall arrive at the age of twenty-five years, to pay over the whole trust estate to his nephew, but in case his nephew dies before reaching the age of twenty-five years, then he directs the trust estate to be divided equally between his brothers, George Hutchinson and James A. Hutchinson, or, in case of their decease, then among their lawful issue. A codicil to the will was made and properly executed on June 11, 1887, which provides that the trust created in favor of Minnie Mae Knapp in the will shall be set aside, and that the $5000 therein provided to be held in trust for her shall be paid to her directly by the executor as her absolute property. The codicil expressly affirms, ratifies and approves all the other terms and conditions of the will.

On December 23, 1887, the will and codicil were admitted to probate. The will appointed John R. Walsh executor, and he qualified as such. The testator had died seized of no real estate, but he left stocks, bonds, notes and mortgages and cash in bank to the amount and value of over $58,000.

On June 18, 1890, George Hutchinson, the now appellant, filed in the circuit court of Cook county this bill to set aside the will and codicil, on the ground "that the said Thomas Hutchinson, at the time of executing said instrument in writing purporting to be his last will and testament, and codicil thereto, was not of sound mind and memory, but, on the contrary, was so weak and feeble in mind and memory as to be incapable of making any just

and proper distributions of his estate." Answers were filed and replications thereto, and an issue was made up and submitted to a jury. The jury, by their verdict, found that the papers purporting to be the last will and testament of Thomas Hutchinson, deceased, and the codicil thereto, were the last will and testament, and codicil thereto, of Thomas Hutchinson, deceased, and that Thomas Hutchinson was of sound and disposing mind and memory when he executed the papers.

The circuit court entered a decree in accordance with the verdict of the jury, and dismissing the bill of complainant for want of equity, at the costs of the complainant; and it further ordered and decreed that the complainant should pay the sum of $2500 as compensation for the services of the solicitors of the guardian *ad litem* of the infant defendant, Thomas Hutchinson, and the sum of $270.71 in reimbursement of the expenditures of said solicitors, and the sum of $450 as compensation for the time and services of the two physicians who were expert witnesses for said guardian *ad litem*, and the further sum of $25 as compensation for the services of the guardian *ad litem*, and that each and all of said amounts should be taxed against the complainant as a part of the costs of suit, and that execution should issue therefor against the complainant.

Upon appeal to the Appellate Court for the First District the decree of the circuit court upon the merits of the cause was affirmed, as was also the order allowing $25 to the guardian *ad litem* and taxing the same against the complainant as costs, but the orders allowing the $2500, the $270.71 and the $450, and awarding execution therefor, were reversed, and the cause was remanded to the circuit court, with directions to set aside the orders taxing such sums against appellant as costs of suit. George Hutchinson, complainant in the circuit court and appellant in the Appellate Court, now brings the case here by this further appeal, and assigns numerous errors; and

two of the appellees, the guardian *ad litem* and the Fidelity Insurance, Trust and Safe Deposit Company, trustee, assign as cross-error that the Appellate Court erred in holding that the sum of $2770.71 paid to the solicitors employed by the guardian *ad litem* for their services and disbursements, and the sum of $450 paid to the experts engaged as witnesses by the said guardian *ad litem,* were, and each of said sums was, improperly taxed against the complainant as a part of the costs of the suit, and in directing that the order taxing such sums against appellant as costs of suit should be set aside.

Messrs. MASON BROS., and Mr. HENRY B. MASON, for the appellant :

The capacity to transact ordinary business is not an infallible test of sanity. *Searle* v. *Galbraith,* 73 Ill. 269 ; *Bible Society* v. *Price,* 115 id. 623.

Solicitors' fees and experts' fees were improperly taxed as costs. *Constant* v. *Matteson,* 22 Ill. 560 ; *Eimer* v. *Eimer,* 47 id. 373 ; *Wilhite* v. *Pearce,* id. 416 ; *Conwell* v. *McCowan,* 53 id. 364.

Messrs. GREEN, WILLITS & ROBBINS, and Mr. A. W. GREEN, for the appellee John R. Walsh, executor.

Messrs. ISHAM, LINCOLN & BEALE, for Julius Heimburg, guardian *ad litem,* and for the Fidelity Insurance, Trust and Safe Deposit Company, trustee :

Capacity to transact ordinary business is not an infallible test of sanity, but it is true that capacity to transact ordinary business shows sufficient sanity to sustain a will, in the absence of delusion specially affecting testamentary capacity. *Burt* v. *Quisenberry,* 132 Ill. 385 ; *Keithley* v. *Stafford,* 126 id. 507 ; *Brace* v. *Black,* 125 id. 33 ; *Schneider* v. *Manning,* 121 id. 377 ; *Bice* v. *Hall,* 120 id. 597 ; *Freeman* v. *Easly,* 117 id. 317 ; *Bible Society* v. *Price,* 115 id. 623 ; *Brown* v. *Riggin,* 94 id. 560 ; *Carpenter* v. *Calvert,* 83 id. 62 ; *Meeker* v. *Meeker,* 75 id. 260 ; *Yoe* v. *McCord,* 74 id. 33.

The charges, costs and expenses of the guardian *ad litem* were properly taxed as costs against the contestant. Rev. Stat. chap. 22, sec. 6 ; *Smith* v. *Smith,* 69. Ill. 308 ; *Stunz* v. *Stunz,* 131 id. 210 ; *Wilbur* v. *Wilbur,* 138 id. 446.

Mr. ALEXANDER S. BRADLEY, for the appellee Minnie K. Rowe.

Mr. JUSTICE BAKER delivered the opinion of the court:

The testimony produced by the contestant of the will and codicil to establish the mental incapacity of the testator is exceedingly weak and unsatisfactory, so much so that even if the case stood alone upon the evidence so produced, with a verdict of a jury to support it, it is matter of grave doubt whether a decree invalidating the will and codicil could be sustained. But when the testimony introduced by the proponents of the will and codicil is considered along with that above mentioned, it seems to us that the testamentary capacity of the testator, and that he was of sound mind and memory within the meaning of the law, are established even beyond a reasonable doubt.

The law does not require that a man, in order that he may make a will and dispose of his property, should have a perfectly well-balanced mind, entirely free from all blemishes and angularities. That which is regarded in the eye of the law as "a sound and disposing mind" is not inconsistent with a very considerable degree of eccentricity. Where there is capacity to transact the ordinary business of life, and an ability to comprehend in respect to the objects and subjects of bounty, and a freedom from insane delusion specially affecting testamentary capacity, there the power and the right to make a will exist. In this case, the testator, until he was fifty-four years of age, spent a busy and active life, devoted to the earning and the accumulation of money. He was a bachelor, and had lived a life aloof from the pleasures of a home and of

society.   At the age above indicated his health became somewhat, but not seriously, impaired, and he disposed of his business with the intention of taking a rest and enjoying the fortune that he had gathered together.   He had been long accustomed to a solitary life, was set in his ways, had his peculiarities and eccentricities, and was somewhat dissipated in his habits, and he, moreover, had little or nothing to occupy his time and attention, was wholly unfitted for social life, and became unhappy and dissatisfied.   But the instincts and habits of a lifetime of money getting and money saving adhered to him, and he was as sensible, cautious and close in respect to business and money matters as ever.   He finally died suddenly, from the effects of a stroke of apoplexy that was the result of the bursting of a blood-vessel in his brain.

If the verdict and decree herein had been otherwise than they are upon the issues whether the writings produced at the trial were the will and codicil of the testator or not, the verdict and the decree could not have been allowed to stand; and even if a new trial was now awarded for technical error, such trial could result only as did this.

Appellant insists that the circuit court committed errors in permitting certain questions to be propounded to witnesses and certain answers to go to the jury, and in sustaining objections to questions asked by him, and in various of its rulings upon the instructions, and in other ways during the progress of the trial.   In that behalf he makes some twenty-seven different assignments of error.   We are inclined to the opinion that none of these alleged errors are well assigned.   But be this as it may, and even assuming that the court committed errors, yet appellant was not injured thereby, the substantial merits and the truth of the controversy being so manifestly against him; and so it would be a waste of time to consider in detail, in this opinion, the supposed manifest errors.   The judgment of the Appellate Court

in affirmance of the decree establishing the validity of the will and codicil was just and right, and in consonance with the principles of the law and of equity.

There remain to be considered, the matter of the solicitors' fee of $2500 for services rendered the guardian *ad litem,* the allowance of $270.71 for expenditures, and the allowance of $450 for the time and services of the two physicians who were introduced as experts in the interest of the proponents of the will. The order making these allowances, and taxing them against the contestant, and awarding execution therefor, was not sustained by the Appellate Court.

The guardian *ad litem* and the Fidelity Insurance, Trust and Safe Deposit Company base their assignment of cross-error in that regard principally upon the provisions of section 6 of the act to regulate the practice in the courts of chancery, (Rev. Stat. chap. 22,) and upon the decision of this court in *Smith* v. *Smith et al.* 69 Ill. 308. The statute in question reads as follows : "In any cause in equity it shall be lawful for the court in which the cause is pending, to appoint a guardian *ad litem* to any infant or insane defendant in such cause, and to compel the person so appointed to act. By such appointment such person shall not be rendered liable to pay costs of suit, and he shall, moreover, be allowed a reasonable sum for his charges as such guardian, to be fixed by the court, and taxed in the bill of costs." The decision in the *Smith case, supra,* was based upon that section of the statute as it stood prior to the act of March 15, 1872. At the date named, the words "to be paid by the party at whose motion he was appointed," were eliminated from the statute as it was prior to that date. (Rev. Stat. 1845, p. 99, sec. 47 ; Laws of 1871–72, p. 329.) It must be presumed that the omission of this clause in the revision of the section was intended to have some effect, in some way. If the legislature had intended to continue the former law in force without alteration, it would have incorporated

the section in the revised act precisely as it was prior to such revision; and the conclusion therefore is, that it acted advisedly in the matter, and really intended to change the former law that required all charges of the guardian *ad litem*, under all circumstances, "to be paid by the party at whose motion he was appointed." *Moore* v. *Moss*, 14 Ill. 106.

In *Smith* v. *Smith et al. supra*, it was contended that the intention of the statute, as it was before the change, was, that the fees due counsel for the guardian *ad litem* and the expenses incurred by such guardian should be allowed by the chancellor and taxed against the estate of the infant. It was held otherwise, the court saying that the statute was too plain to require or even admit of construction, and that under it the charges could only be taxed against the party who prayed or moved for the appointment of the guardian *ad litem*. At the time the decision was made, in 1873, the section had been amended as above mentioned, but the court held that the amended section did not apply to the case before them, and in the opinion it is intimated that if it had been applicable to the case then in hand, then the charges could and should have been taxed as contended for.

In *Wilbur* v. *Wilbur et al.* 138 Ill. 446, the decree was against the validity of the will. The court had appointed a guardian *ad litem* for the infant heirs, and had allowed him a fee of $300, to be paid out of the estate of the deceased. It was contended that said fee should have been charged to the unsuccessful proponent of the will. It was held that there was no error in the decree of the court charging it against the estate. In this case, as in that, we are unable to discover any merit in the claim that the unsuccessful party should be required to pay the fees of solicitors who did not appear for him or for his benefit. In respect to compensation other than the *per diem* and mileage allowed ordinary witnesses, physicians and experts stand upon the same footing.

As matter of course, the appellant in this case stated in his bill of complaint that Thomas Hutchinson, son of James A. Hutchinson, was an infant, and asked "that a guardian *ad litem* should be appointed by the court to appear for and represent the interests of said infant." He could not well have proceeded in any different way. It would be a heavy tax upon, if not a denial of, justice, to keep out of court a citizen who is advised that he has just ground for relief in equity, without he assumes a liability to pay the fees and expenses of the solicitors and experts employed by his adversaries, in all cases where one or more of the opposite parties in interest happen to be under full age. The general rule that prevails in this State is, that solicitors' fees and experts' fees can not be taxed as costs against unsuccessful litigants in chancery suits, and that the discretion of the chancery courts in awarding costs in such cases is confined to statutory allowances. *Constant* v. *Matteson et al.* 22 Ill. 546 ; *Conwell* v. *McCowan et al.* 53 id. 363.

We think that the Appellate Court made a proper order in regard to solicitors' fees, experts' fees and the expenditures of the guardian *ad litem.*

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*