MARY E. BAILEY, Appellant, *vs.* GEORGE OBERLANDER *et al.* Appellees.

*Opinion filed April 21, 1928.*

1. WILLS—*what constitutes testamentary capacity.* To have testamentary capacity a testator or testatrix does not have to be of sound mind and memory in every respect, but all that is required is a sufficient mental ability, at the time of making the will, to know and remember the natural objects of his bounty, to comprehend the kind and character of property owned and to make disposition of that property according to some plan formed in his mind, or to understand the particular business of making a will.

2. SAME—*what does not render one incompetent to make will.* Neither physical and mental weakness due to old age, nor eccentricity, uncleanliness, slovenliness, neglect of person and clothing and offensive and disgusting habits, necessarily constitute unsoundness of mind or render one incompetent to make a will.

3. SAME—*what necessary for insane delusion to avoid a will.* It is not every insane delusion that will avoid a will but to do so the insane delusion must affect the testamentary disposition of the property.

4. SAME—*when, only, will decree in a will contest be reversed.* It is only where the finding of the jury is clearly and manifestly against the weight of the evidence that a court of review will reverse a decree in a will contest on the question of testamentary capacity.

5. SAME—*when court does not err in taking issue of undue influence from jury.*  Although the evidence shows that the chief beneficiary lived with the testatrix and accompanied her when she went to her attorney to have her will drawn, yet where there is no evidence that said beneficiary took any part in the preparation or execution of the will and no evidence that he exercised any undue influence of any kind, the court may instruct the jury that there is no evidence to sustain the charge of undue influence.

6. SAME—*what undue influence will invalidate a will.*  The undue influence which will invalidate a will must be influence which is especially directed to procuring the will in favor of particular parties, it must be operative at the time of the transaction, and the will must be made as the result of such influence and not as the free will of the testator or testatrix.

7. SAME—*fiduciary relation does not, alone, raise presumption of undue influence.*  A fiduciary relation does not, alone, raise any presumption of undue influence, but that presumption arises only from the fact that the dominant party was directly connected with the making of the will.

8. SAME—*what instruction as to testamentary capacity is not misleading.*  Where a will is contested on the ground of want of testamentary capacity, an instruction stating that if the jury believe from the evidence that the testatrix, at the time she signed the alleged will, had mind and memory sufficient to transact ordinary business and that she knew and understood the business in which she was engaged they must find for the will, is not misleading in omitting all reference to the testatrix's knowledge of the objects of her bounty, where other instructions correctly inform the jury what facts are necessary to be proved in order to establish a valid will.

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

JOHN T. MURRAY, and P. F. MURRAY, for appellant.

KANNALLY & MEGAN, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, Mary E. Bailey, filed her bill in the circuit court of Cook county to contest the will of her sister, Sarah E. Savage, on the ground of her mental inability to execute

the will and on the ground of the fraud, deceit, misrepresentation and undue influence of her brother, George Oberlander, who was the principal beneficiary under the will. There was a trial by jury, a verdict and decree sustaining the will, and an appeal has been prosecuted to this court.

At the time the will was executed the testatrix was about seventy-six years old. For many years she was a teacher in the Chicago public schools. She lived with her husband on Sheridan road, in Wilmette. They had no children. Her sister Emily Stenberg, who was a widow and feeble-minded, lived with her. For about two years prior to the death of the testatrix her brother George lived in the family. The testatrix had another sister, Mrs. Bailey, appellant herein, and another brother, John Oberlander, who lived in Ohio. In November, 1922, the testatrix's husband took sick, and he died May 8, 1923, leaving a will, which gave all of his property to her. A few days after the death of her husband she visited the office of her attorney for the purpose of having the will of her husband probated. At that time she told her attorney she wanted to make her will. On May 24, 1923, she executed the will in question, in which she gave all of her property to her brother George on condition that he expend from time to time such sums as were necessary for the comfortable support and maintenance of their sister Emily during her lifetime. On June 4, 1923, the testatrix had a stroke of paralysis and died on June 18, 1923. John Oberlander died October 10, 1923, and Emily Stenberg died June 7, 1924.

Ten witnesses testified that the testatrix was of sound mind at the time she executed her will. Three of them were lawyers who witnessed her will. One of them had known her over forty years and had gone to school to her. Another had known her about five years. The physician who cared for her husband from April 28, 1923, to the time of his death, testified that after the death of her husband he saw her from sixteen to eighteen times and talked

to her on each occasion, and that she was of sound mind and memory. The other witnesses included the nurse who waited on the testatrix during her last illness; a real estate man who had business transactions with her and her husband just before the death of the husband and with her after his death; a public stenographer who had known her for over thirty-seven years; the supervisor of operations of the Chicago and Northwestern railway, who had known her about six years; and two business men, one of whom had known her sixteen or seventeen years and the other had known her about five or six years. Nine witnesses testified for appellant, five of whom were related to the testatrix in some degree. Seven of them expressed no opinion as to her mental ability to make a will. Two testified that at times she was irrational. One said that by irrational she meant that the testatrix was not of sound mind. Some of them testified that the testatrix in her younger days had been a bright woman, highly educated, had taught school, and had been neat, tidy and attractive in her manner of dress; that during the last few years of her life she seemed to lose a great deal of her education, became careless in her dress and appearance, her hair was unkempt, her clothes and hats were out of style, she wore long dresses which swept the ground, her home was untidy and she was penurious. Some of them testified that she was nervous, forgetful, repeated frequently, recited poems dramatically, and joined Bahai Temple. One witness testified that whatever pet theories she had she would expound them by the hour. She said she would not sell the property which she owned in Skokie swamp because they were going to move the national capitol there; that she had a vision; that she stood on a bridge over the river that went by her property; that it would make a beautiful site for a hotel; that she could see aeroplanes landing on the roof; that she would sell the property if she could get a million dollars and that she had turned down $300,000 for it.

The question is whether or not this evidence was sufficient to show that the testatrix was so mentally deficient that she was unable to make a will. In order to have testamentary capacity a testatrix does not have to be absolutely of sound mind and memory in every respect. (*Hutchinson* v. *Hutchinson,* 152 Ill. 347.) All that is required is that she have sufficient mental ability to know and remember who are the natural objects of her bounty, to comprehend the kind and character of her property, and to make disposition of that property according to some plan formed in her mind. (*Donovan* v. *St. Joseph's Home,* 295 Ill. 125; *Dowdey* v. *Palmer;* 287 id. 42; *McLean* v. *Barnes,* 285 id. 203.) Physical and mental weakness due to old age will not necessarily render one incompetent to make a will. Although a woman may be physically and mentally weak, if she has sufficient mental ability to comply with the requirements above stated she is competent to make a will. (*Woodman* v. *Illinois Trust and Savings Bank,* 211 Ill. 578; *Poolcr* v. *Cristman,* 145 id. 405.) She must understand the particular business in which she is engaged. (*Austin* v. *Austin,* 260 Ill. 299; *Johnson* v. *Farrell,* 215 id. 542.) The test refers to the time of making the will. (*Turckheim* v. *Birkley,* 287 Ill. 434.) Eccentricity, uncleanliness, slovenliness, neglect of person and clothing, offensive and disgusting habits, do not constitute unsoundness of mind. (*Estes* v. *Clark,* 317 Ill. 585.) It is not every insane delusion that will avoid a will. In order to avoid a will the insane delusion must affect the testamentary disposition of the property. (*American Bible Society* v. *Price,* 115 Ill. 623; *Owen* v. *Crumbaugh,* 228 id. 380.) It is only where the finding of the jury is clearly and manifestly against the weight of the evidence that a court of review will reverse a decree in a case of this kind. (*McGrady* v. *McGrady,* 298 Ill. 129; *Daugherty* v. *State Savings, Loan and Trust Co.* 292 id. 147.) In this case the clear preponderance of the evidence, including both the number of witnesses who

testified and the facts about which they testified, shows that the testatrix was of sound mind and memory and was mentally capable of making a will.

The charges of fraud, deceit and misrepresentation alleged in the bill are based upon the fact that George Oberlander, in making proof of heirship of the testatrix at the time her will was admitted to probate, omitted from the list of heirs John Oberlander, a brother of the testatrix; that he told appellant that John was dead; that four witnesses testified that the testatrix said that George had told her that John was dead; that he died in Ohio; that George had been with him shortly before his death. George testified that in making the proof of heirship he omitted John's name because he thought he was dead; that the only conversation he had with appellant with reference to the matter was after the death of the testatrix, when appellant told him that John was living; that subsequent to the death of the testatrix he had no conversation with the other witnesses in which John's name was mentioned. It appears from the evidence that many years before the death of the testatrix her brother John disappeared and had not been heard from for many years. His relatives did not know where he was or whether he was living or dead. Some of them apparently thought he was dead. There is no evidence showing, or tending to show, that George, in making the affidavit of heirship or in making any of the statements to which witnesses testified, did so for the purpose of trying to deceive the testatrix into the belief that John was dead, but, on the contrary, the evidence shows that any statements which he made were made under the honest belief that the brother was dead. It is also apparent that appellant had as much information as to the death of her brother as had George. Unless the statements complained of were made for the purpose of deceiving the testatrix they were not material in this case. It is not probable that the testatrix would have made a will in which she left a

part of her estate to a brother she had not seen or heard from for a great many years and whose existence was uncertain. The question of fraud and deceit, however, was submitted to the jury. The court instructed the jury that if they believed George had made fraudulent representations to the testatrix and that the will was executed by reason of such fraud and misrepresentations on his part, they should find that the will was not her will. The jury found against the contention of appellant, and such finding is sustained by the evidence.

The court instructed the jury that there was no evidence to sustain the charge of undue influence as alleged in the bill, and this ruling is assigned as error. The evidence shows that George Oberlander was a member of the testatrix's household when her husband first became ill. He helped her take care of her husband, and he remained in the home after the death of the husband and until her death. When she went to the office of her attorney to have her husband's will probated George went with her. At that time she told her attorney she wanted to make a will. There is no claim that George heard this conversation or knew that she wanted to make a will. The attorney told her privately to determine how she wanted it made and return in a few days and he would prepare it. A few days later she returned to the office and George accompanied her. He remained in the outer office. She went into the inner office with her attorney, where she remained for about an hour and a half. The will was discussed, prepared and read to her. She said she wanted all of her property to go to George; that she had confidence that he would take care of her feeble-minded sister. Witnesses were called and the will was executed. There is no evidence that George took any part in the preparation or execution of the will or that he even knew a will was being executed. The undue influence which will invalidate a will must be influence which is especially directed to procuring the will in favor of the

particular parties. It must be operative at the time of the transaction and the will must be made as the result of such influence and not as the free will of the testatrix. (*Blackhurst* v. *James,* 304 Ill. 586.) Even a fiduciary relation does not raise any presumption of undue influence, but that presumption arises only from the fact that the dominant party was directly connected with the making of the will. (*Teter* v. *Spooner,* 305 Ill. 198.) There is. no evidence which shows any undue influence and the court committed no error in so instructing the jury.

Complaint is made of one instruction given on behalf of appellees, which told the jury that if they believed from the evidence that the testatrix, at the time she signed the paper in dispute, had mind and memory sufficient to transact ordinary business, and that when she made the will she knew and understood the business in which she was engaged, then the jury should find such writing to be her last will and testament. It is insisted that this instruction is erroneous because it omits all reference to her knowing who were the objects of her bounty. In *American Bible Society* v. *Price, supra,* a decree was affirmed where an instruction was given in the exact language of this instruction. Other instructions on both sides correctly informed the jury what facts were necessary to be proved in order to establish a valid will. The jury could not have been misled by the instruction given on the grounds urged against it.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is rendered in accordance therewith.

*Decree affirmed.*