(No. 19007.—

Maria Ughetti *et al.* Appellees, *vs.* John B. Ughetti, Appellant.

*Opinion filed April 20, 1929.*

Cutting, Moore & Sidley, (Charles S. Cutting, of counsel,) for appellant.

Cook & Albert, for appellees.

Mr. Chief Justice DeYoung delivered the opinion of court:

Maria Ughetti and Bernardo Ughetti, her husband, filed a bill in the circuit court of Cook county against John B. Ughetti, individually and as executor, Maria Ughetti, his wife, and Anna Camozzi and Joseph Camozzi, her husband, to contest the last will of Charles L. Ughetti, deceased. The complainants charged the want of testamentary capacity and the exercise by the defendant John B. Ughetti of undue influence to procure the execution of the will. John B. Ughetti and his wife filed an answer denying the allegations of the bill. During the pendency of the suit Anna Camozzi died, leaving her husband and Mamie Kruse and Maria Aouste, her daughters, surviving her. By an amendment to the bill the surviving husband and daughters were made additional complainants. A jury was waived, a hearing followed, and the court by its decree found that Charles L. Ughetti was of sound mind and memory at the time he executed the instrument but that its execution was procured by the improper restraint and undue influence exercised by the defendant John B. Ughetti. Accordingly the instrument was declared void and its admission to record was

set aside. From that decree John B. Ughetti prosecutes this appeal.

On November 29, 1922, Charles L. Ughetti, a widower, eighty years of age, resided with his son, John, at the home of the latter, in the city of Chicago. On that day the father, accompanied by his son, went to the Lake View Trust and Savings Bank, which was located near his home and in which he kept an account, intending to have his will drawn there. At the bank he was told to go to some lawyer in the principal business district of the city for that purpose. The son then informed his father that he understood there was a lawyer at the Citizens State Bank, which was located in the same vicinity and with which the son transacted business, who might draw his will. They proceeded to the latter bank and there met Henry F. Hawkins, the trust officer, who is a lawyer. The son told Hawkins that his father desired to make a will, but he made no suggestion respecting its contents and immediately left the bank. After the son's departure Hawkins interrogated the father concerning the number of his children, the nature of his property and the disposition he wished to make of it. He told Hawkins that he had three children—a son and two daughters; that his property consisted of a house and lot and a small balance to his credit in the Lake View Trust and Savings Bank, and that he wanted to give one daughter $200, the other daughter $300 or $400, and the rest of his estate to his son. Hawkins inquired why he did not divide his property equally among his children. He answered that he would not make such a division; that he had told Hawkins how he wanted to dispose of his property; and that his reasons for making the disposition he had directed were that neither daughter seemed to care for or show any interest in him while his son had been kind and had furnished him a home. Hawkins stated that the will would soon be ready for execution. The testator left, returned to the bank, found the will had not been completed, left again,

and returned the second time about forty-five minutes later. Hawkins read the will to him and asked whether he approved it. He answered in the affirmative, and Hawkins then called two officers of the bank to act, with himself, as attesting witnesses. In the presence of these witnesses the testator signed the instrument. After doing so he remarked that his hand was shaky and that he ought to sign his name once more. Accordingly he affixed his signature the second time, and the witnesses in his presence attested his execution of the instrument as his will. He left it in the trust department of the bank for safe keeping. The testator by this instrument bequeathed $200 to his daughter Maria Ughetti and $400 to his daughter Anna Camozzi, and he devised the residue of his estate to his son, John. The son was named sole executor of the will and he was given the power to manage and sell the estate. Ughetti died on April 5, 1925. The instrument was thereafter admitted to record by the probate court of Cook county, and letters testamentary thereon were granted to the son, John B. Ughetti.

Appellees make no complaint of the circuit court's finding that Charles L. Ughetti was of sound mind and memory at the time he executed the instrument in question as his last will and testament. For that reason the only issue presented for determination by this appeal is whether its execution was the result of undue influence exercised by John B. Ughetti, the son. Appellant contends that the evidence fails utterly to support the charge. To sustain the decree in that respect, appellees argue, on the contrary, that the father was of advanced age and infirm physically; that he resided with his son, who accompanied him to the bank where the instrument was executed; that he was an Italian, unable to speak or understand the English language, and hence could not impart to a lawyer unacquainted with the Italian language the data and information necessary to enable him to draw a will; that the instrument, upon its

execution, was not taken by the testator but was left in the custody of the bank, and that by the provisions of the instrument the appellant will receive the major portion of the estate.

Ughetti was of advanced age, and physical infirmities naturally followed. The law prescribes no limit in point of age beyond which a person cannot dispose of his property by will. Infirmity from old age does not render a person incapable of making a will unless the infirmity has impaired his mind to such an extent that he is incapable of understanding the business in which he is engaged at the time he makes his will. (*Blackhurst* v. *James,* 304 Ill. 586; *Farmer* v. *Davis,* 289 id. 392; *Carnahan* v. *Hamilton,* 265 id. 508; *Woodman* v. *Illinois Trust and Savings Bank,* 211 id. 578; *Schmidt* v. *Schmidt,* 201 id. 191.) In *VanAlst* v. *Hunter,* 5 Johns. Ch. 148, Chancellor Kent said: "The testator was between ninety and one hundred years of age when he made his will, but it is well understood that age alone will not disqualify a person from making a will provided he has a competent possession of his mental faculties. 'A man may freely make his testament how old soever he may be, for it is not the integrity of the body, but of the mind, that is requisite in testaments.' * * * This has been the doctrine of law in every age. * * * The law looks only to the competency of the understanding, and neither age nor sickness nor extreme distress or debility of body will affect the capacity to make a will if sufficient intelligence remains." There was no evidence of an impairment of Ughetti's mental faculties. The circuit court expressly found that he was of sound mind and memory when he executed the instrument in question, and that finding is not controverted by the appellees.

The testator resided with his son and the latter accompanied him to the bank where the instrument was executed. Appellees emphasize these facts as evidence of the exercise of undue influence by the appellant. The testator was a

widower, eighty years of age, and it was only natural that he should live with one of his children. Filial duty would impel the son to accompany his aged father to the bank where the latter deposited his money and where he desired to have his will drawn. When the father failed to find a lawyer at that bank, it is not strange that he wished to avoid the inconvenience of a trip to the center of the city, as had been suggested, and sought a lawyer in his neighborhood. Nothing in the evidence indicates that the son knew beforehand that his father would be unable to have his will drawn at the bank where he was acquainted. It affirmatively appears, however, that the son took no part in the preparation of the will, for he departed immediately after he and his father arrived at the second bank and was absent when the will was drawn and executed.

Upon the question of Ughetti's ability to speak and understand English the evidence is practically undisputed. Hawkins, who drew the will, testified that Ughetti imparted to him in English the facts concerning his property and the division of it he sought to effect. John G. Squires and Frank M. Spohr, two of the attesting witnesses, testified that Ughetti spoke and understood English. Dr. Gustave E. Brandle, who had attended Ughetti in 1921 when he was ill and elicited his symptoms in English, believed that his knowledge of that language was sufficient to enable him to discuss the disposition of his property with a person who could only speak English. Albert Gorges, a neighbor, who often saw Ughetti; John Scholtes, who had been acquainted with him since 1895 and met him once or twice a week since 1921; Hannah Cohn, a neighbor and an acquaintance of thirty years; John Spengler, a special police officer in the Lincoln Trust and Savings Bank, who saw him come to that bank occasionally, and Mary Wesley, a nurse who attended Ughetti in his last illness, all conversed with him in the English language. The countervailing testimony offered by the appellees lacks probative force. Gustave Os-

burg, an acquaintance of many years, who spoke Italian, testified that he seldom heard Ughetti speak English. Osburg's wife believed that Ughetti could speak English to a limited extent. Albert Erickson, who saw Ughetti at the home of Mrs. Camozzi, his daughter, but did not engage in conversation with him, never heard him speak English. Sophie Erickson, Albert's mother, addressed Ughetti in English, but he merely shook his head and did not speak to her. Henry C. Laage, an acquaintance of twenty-five years but who testified that he did not speak Italian, interrogated Ughetti concerning his daughter's illness and inquired whether his income was superior to hers. Ughetti, he said, did not seem to understand his questions. The witness admitted, however, that he had occasionally held conversations with Ughetti from 1922 until he died. Irving R. Black, a nurse, who attended Ughetti during the last two weeks of his life and conversed with him only in a professional way, had difficulty in making him understand his questions and for that reason assumed that he could not speak English.

The witnesses called by the appellant testified that Ughetti spoke English, and some of appellees' witnesses admitted that he spoke and understood that language to some extent. The fact that he refrained from speaking English in the presence of, or that he could not understand certain questions propounded to him by, other witnesses called by the appellees fails to prove that he was ignorant of that language. He might have been silent from choice and a simpler form of inquiry might have been readily understood. It would not require an extensive vocabulary for a person in Ughetti's situation to impart to a lawyer the nature and extent of his property and the simple disposition he sought to make of it among his three children. Upon the question whether Ughetti was capable of conveying in English his wishes in respect of the testamentary disposition of his property, and his reasons therefor, the

testimony of Hawkins, the lawyer, was not impeached in any degree.

The retention of the will by the Citizens State Bank has no tendency to support the appellees' charge of the exercise of undue influence. The will was left with the bank by the testator for safe keeping, merely. Neither the bank nor any officer was made a beneficiary or fiduciary under the will, and no legitimate inference can be drawn from the evidence that any officer or person connected with the bank was interested in assisting appellant to procure an unequal or excessive share of his father's estate.

The undue influence which will avoid a will must be directly connected with the execution of the instrument and operate at the time it is made. The influence must be specially directed toward procuring the will in favor of a particular party or parties, and it must be such as to destroy the freedom of the testator's will and render the instrument obviously more the offspring of the will of another or others than of his own. (*Farmer* v. *Davis, supra; Snell* v. *Weldon,* 239 Ill. 279; *Larabee* v. *Larabee,* 240 id. 576; *Wickes* v. *Walden,* 228 id. 56; *Woodman* v. *Illinois Trust and Savings Bank, supra; Roe* v. *Taylor,* 45 Ill. 485.) The influence which a child may acquire from association with and attention and acts of kindness to a parent will not avoid the latter's will if the influence is exerted in a fair and reasonable manner and without fraud or deception. There is no proof that the appellant, directly or indirectly, participated in the consideration, preparation or execution of the will. The testator, in the absence of the appellant, gave Hawkins, the lawyer, his reasons for making an unequal distribution of his property. Admittedly possessed of the requisite mental capacity, he had the right, under the law, to make such a division. Chancellor Kent well said in *VanAlst* v. *Hunter, supra:* "It is one of the painful consequences of extreme old age that it ceases to excite interest and is apt to be left solitary and neglected.

The control which the law still gives to a man over the disposal of his property is one of the most efficient means which he has in protracted life to command the attentions due to his infirmities. The will of such an aged man ought to be regarded with great tenderness when it appears not to have been procured by fraudulent arts but contains those very dispositions which the circumstances of his situation and the course of the natural affections dictated." The evidence clearly shows that Ughetti, notwithstanding his advanced age, without influence or restraint, transacted the important business of making a testamentary disposition of his property.

The decree of the circuit court of Cook county is reversed and the cause is remanded to that court, with directions to dismiss the bill of complaint for want of equity.

*Reversed and remanded, with directions.*