(No. 20429.—

MINNIE HEFNER HAUPTMAN *et al.* Appellants, *vs.* MARY GRAEHL *et al.* Appellees.

*Opinion filed February 18, 1931.*

THOMAS S. WELDON, CHARLES P. KANE, and L. EARL BACH, guardian *ad litem,* for appellants.

HALL, MARTIN, HOOSE & DEPEW, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Minnie Hefner Hauptman, a daughter of Peter Lutje, and five of his grandchildren, who were the children of a deceased daughter, filed their bill October 4, 1929, in the circuit court of McLean county to contest the will of Peter Lutje. The complainants charged in their bill that the decedent lacked testamentary capacity, and that his daughter Mary Graehl, who received the greater portion of the estate, unduly influenced him and dominated his acts in the making of his will. After answers and replications were filed the cause was submitted to a jury, and a verdict was returned finding the instrument offered in evidence to be the last will and testament of Lutje. A motion for a new trial was denied and a decree rendered declaring the instrument admitted to probate on September 3, 1929, by the probate court of McLean county to be the last will and testament of Lutje and dismissing complainants' bill for want of equity. From that decree an appeal has been perfected to this court.

Peter Lutje lived on West Washington street, in Bloomington, Illinois, when he made his will, December 27, 1928. A few years prior thereto he and his wife lived in Sibley, Illinois, and two of their grandchildren lived with them. After they moved to Bloomington Mrs. Lutje died, the grandchildren left, and a daughter, Mary, kept house for her father. The West Washington street property which Lutje owned was a two-story double house or apartment building. He and his daughter Mary lived on the east side and apparently kept roomers at times. She was later married to Carl Graehl and they continued to reside there with her father. The west side of the apartment building was occupied by one of the complainants, Minnie Hefner Hauptman, and her daughter Luella Kerr. During the fall of 1928 Lutje became ill. He used some medicines and remedies suggested to him and furnished by an old soldier named Stewart, who was eighty-six years of age and resided in

Normal, Illinois. A physician who lived in Colfax, Illinois, and who had known and treated Lutje's family for twenty-five years or more, was called about December 19, 1928, and again on December 24. Another doctor residing in Normal treated Lutje on December 25 and 26. A third doctor was called in to see him about the first of January, 1929, and at this time a trained nurse was with the patient for a while. He had organic heart trouble, a dropsical condition affecting the lower limbs, was short of breath, somewhat bloated and nervous and was unable to sleep. On the morning of December 27 Ernest Kuttler, a retired boilermaker who lived in the neighborhood, called upon Lutje, and the latter asked him to go up-town and get Ivan Cole, a lawyer, as he (Lutje) wanted to make a will. Kuttler said he did not know where to go, and Lutje asked his son-in-law, Graehl, to get Cole. Graehl went to Cole's office as requested and Cole came alone to Lutje's house later in the morning. The attorney met Mrs. Graehl, Mrs. Hauptman and Kuttler there. The two women left the room and Cole and Kuttler remained in the living room with Lutje, who was seated in a chair near a table. The attorney talked with Lutje about his will, and the latter told him who his relatives were, what property he owned and directed how he wanted to dispose of it. Cole took notes of Lutje's requests and went back to his office to prepare the will. After it was drafted and typewritten Cole returned to Lutje's house late in the afternoon. Mrs. Hauptman went after Kuttler, requesting him to come over, and in the presence of Lutje and Kuttler the attorney read the will to Lutje, who said it was just what he wanted. Lutje signed his name to the instrument in the presence of Kuttler and Cole and they signed it as attesting witnesses. By this instrument he directed that all his debts and funeral expenses be paid; that his executrix sell all his real and personal estate and from the proceeds thereof the bequests mentioned therein were to be paid. He bequeathed to his daughter Minnie

Hefner Hauptman, one of the complainants, $500; to Minnie's daughter Luella Kerr, $500; to each of the five grandchildren, who were children of a deceased daughter, $100; to his sister, who lived in Germany, $100, and to his daughter Mary Graehl, $2000. All the residue of his estate was bequeathed to Mary Graehl, and she was named as executrix, to act without bond or compensation. Lutje's health improved after the serious illness previously referred to, and he died July 23, 1929. The surviving heirs-at-law of the testator were his two daughters, Minnie Hefner Hauptman and Mary Graehl, and the five children of a deceased daughter.

The contestants, who are appellants here, assert in their errors relied upon for reversal, that the court erred in permitting proponents of the will to give opinions as to the mental capacity of the testator without establishing a proper foundation for such testimony; that the court erred in refusing to admit some of the evidence offered by complainants relative to what the daughter Mary said to her father about 8:30 o'clock on the morning of the day the will was executed, also what was said by the testator about his will to another witness five months after making it; that other testimony of an impeaching character should have been admitted; that proper instructions were offered and refused, and that the verdict was contrary to law and the weight of the evidence. Not all of these alleged errors are discussed in the brief of counsel.

Ivan Cole testified, in substance, that he had practiced law in Bloomington six years; that he had known Lutje since the summer of 1928, when he came to the attorney's office and consulted him concerning a note which he had signed as security for an old gentleman named Hammer, who lived at Stanford. The note was due and Lutje wanted Cole to try to make Hammer pay the note. The attorney related going to see Lutje at his house on the morning of December 27, 1928, and talking with him in the

presence of Kuttler about Lutje making a will. He said Lutje told him how he wanted to dispose of his property, named his daughters, his grandchildren and his sister in Germany, and stated how much he wanted each to receive. Cole stated Lutje said he wanted to give Luella Kerr $500, because the only way she would get any money that he left her would be to give it to her direct, as money slipped through her mother's hands like water and she would just "blow it in." The witness also testified that Lutje said his daughter Mary had always stayed with him and his wife and had taken care of them, and giving her the property was the only way he could re-pay her. Lutje told Cole he owned the West Washington street property, some residence property in Sibley and some certificates in the American State Bank. He was sick and was limping around at the time but sat in a chair at a table while talking to Cole about making his will. He said he wanted Mary to be executrix and Kuttler to be a witness. While Cole was there Lutje asked if the Hammer note had been paid and inquired how much Cole intended to charge him· for making the will. Cole testified that just he, Kuttler and Lutje were present in the room when he returned to the house in the afternoon with the will; that the instrument was read to Lutje, who approved it, and it was then executed and attested by himself and Kuttler. Cole was of the opinion that Lutje was of sound mind when the will was executed. Cole further stated that he talked with Lutje again in the spring of 1929, before he died. He went to Cole's office at that time to see the attorney about the Hammer note.

Ernest Kuttler, an elderly man, testified he lived in Bloomington, had known Lutje for three or four years and saw him often during the last year of his life. He told of having visited Lutje on the morning of December 27, 1928, and corroborated Cole as to Lutje's physical and mental condition, as to what was said and who was present when the making of the will was discussed ˙in the morning at

Lutje's house, and also when it was executed and attested there in the late afternoon of the same day. The witness said when Lutje signed the will he was just as good mentally as he ever had been. He stated that the testator was quite ill at one time and talked out of his head but thought the time was early in January, 1929.

These two witnesses presented rather fully what occurred on December 27, 1928, at Lutje's house when the preliminary conversation relative to the making of Lutje's will was had, and also what was done, who were present and Lutje's approval of the will as drafted when the instrument was executed. None of the members of the family had anything to do with the preparation or execution of the will. The only proof of undue influence of any consequence which was introduced in evidence or offered for that purpose was a statement made by Stewart, the eighty-six-year-old medicine man, that one morning about December 21 or 22, when he was going into Lutje's house, he heard a woman's voice, and she said, "That will had to be signed; that is all," and a further statement made by Luella Kerr that on the morning of December 27 she heard her Aunt Mary scolding her grandfather, and that she said to him, "The will had to be made because she wasn't going to be beat out of anything." There was some other testimony tending to show that Mrs. Hauptman was the favorite daughter, and that the other daughter, Mary, had tried to make her father believe his grandchildren and other relatives did not care for him. The undue influence which will avoid a will must be directly connected with the execution of the instrument and operate at the time it is made. The influence must be specially directed toward procuring the will in favor of a particular party or parties, and it must be such as to destroy the freedom of the testator's will and render the instrument obviously more the offspring of the will of another or others than of his own. (*Applehans v. Jurgeson,* 336 Ill. 427; *Ray v. Koenigsmarck,* 329 id.

588; *Snell* v. *Weldon*, 239 id. 279.) Influence over a testator gained by affection and friendly attention to him is not regarded in law as undue influence. (*Waters* v. *Waters*, 222 Ill. 26; *Ray* v. *Koenigsmarck, supra.*) If a testator possesses the required mental capacity he has the legal right to make an unequal distribution of his property among his heirs or give it entirely to strangers. (*McGrady* v. *Mc-Grady*, 298 Ill. 129.) We think the evidence introduced by appellants, when considered with that offered and refused, fails to sustain the allegation of undue influence.

On the question of testamentary capacity there were seventeen witnesses offered by the proponents of the will. Three witnesses testified upon this subject for the contestants. Attorney Cole, who related in detail his business association with the testator on the day the will was executed, was of opinion he was of sound mind at that time. He said Lutje was sick but not to such extent that he did not know what he was doing. He also stated that Lutje came to his office in the spring after the will was executed to talk with him about the Hammer note. Ernest Kuttler, the other subscribing witness to the will, who had known Lutje for three or four years and saw him frequently during the last year of his life, said he was just as good mentally when he signed the will as he had ever been. Two of the doctors who were called to see Lutje when he was ill in December said he was seriously ill. One of them had known the patient and had treated his family for at least twenty-five years. Both doctors were of opinion Lutje was of sound mind when they saw him. An assistant engineer on the Chicago and Alton railroad roomed at Lutje's house from the first part of November till the last of April, 1929. He stated he talked with Lutje frequently and saw him most every day and that he always talked sensibly. The witness said Lutje was an elderly man and walked slowly, and that he said he had trouble with his limbs and it was hard for him to get around. He remembered talking to Lutje a day

or two after Christmas and also about his being ill in January. Though the witness had no business dealings with him, he was of opinion that Lutje was of sound mind and memory. The other witnesses who testified for the proponents of the will and who thought Lutje was of sound mind were engaged in different vocations and had known Lutje for various lengths of time. The evidence of the contestants on this branch of the case was to the effect that on one occasion Lutje thought someone was moving all the furniture out of his house; that he was worried and nervous; that he talked out of his head and called upon his dead relatives during the night prior to making his will. The granddaughter Luella Kerr testified to the serious condition of her grandfather on the night of December 26, when she sat up with him. The most that can be said of her testimony is that when Lutje was ill he was delirious, and the time of his most serious illness is somewhat in dispute. It is improbable that he could have been so seriously ill the night of December 26 and have talked so intelligently the next morning about making his will as related by the subscribing witnesses to that instrument. The grand-daughter admits Lutje improved mentally, as some time in February, 1929, she had him sign a note for her benefit. Physical and mental weakness due to old age will not necessarily render one incompetent to make a will. Although a person may be physically and mentally weak, if he has sufficient mental capacity to know the natural objects of his bounty, to comprehend the kind and character of his property, to understand the particular business in which he is engaged and to make disposition of his property according to some plan formed in his mind, then he is competent to make a will. (*Bailey* v. *Oberlander*, 329 Ill. 568; *Applehans* v. *Jurgenson, supra; Donovan* v. *St. Joseph's Home*, 295 Ill. 125.) In this case the clear preponderance of the evidence, including both the number of witnesses who testified and the facts and circumstances about which they testified, shows

that the testator was of sound mind and memory and was mentally capable of making a will. We have read all the evidence presented on the trial as well as that complained of as having been refused admittance by the court. Had the rejected evidence been received it could not have changed the ultimate result of the case. This court will not disturb the verdict of a jury in a contested will case unless it is manifestly against the weight of the evidence. *Voodry* v. *University of Illinois,* 251 Ill. 48.

There being no reversible error in the record, the decree of the circuit court will be affirmed.

*Decree affirmed.*